## Boyd *against* Sappington.

A request by a father to a physician to attend his son, then of full age, and sick at the father's house, raises no implied promise on the part of the father to pay for the services rendered.

On the trial of such a claim, it is competent for the defendant to give evidence of the ability of the son to pay.

ERROR to the common pleas of *Lancaster* county.

The plaintiff's claim was for medical services rendered by the plaintiff to the son of the defendant, as it was alleged, at the request of the latter. The witness for the plaintiff below said : "in June 1827, Doctor Sappington was at my house to see my children ; Nicholas Boyd came there, and told him he wanted him to go and see his son William, who was very bad. The doctor made no reply. Mr Boyd said, 'Doctor, you must come ; I am afraid my son will die :' he hesitated, and agreed to go. He said, 'If I must go with you, we must go by my house—I must get some medicine.' William had the dysentery ; he was living with his father ; he was Mr Boyd's eldest son ; he was a single man. This conversation was before he had visited the son." On the trial, the defendant offered to show that the son was in business for himself, and had property of his own. This was objected to by the plaintiff, and rejected by the court. The court instructed the jury, that if they believed the facts as proved, they raised an implied promise by the defendant to pay.

The rejection of the evidence, and this direction of the court, were the errors assigned.

*Champneys*, for plaintiff in error.

*Franklin*, for defendant in error, cited, 2 *Saund.* 211, *b* ; 1 *Esp. N. P.* 270 ; *Whart. Dig.* 55, *pl.* 24, 25.

The opinion of the Court was delivered by

ROGERS, J.—This was an action to recover a bill for medical services rendered by the plaintiff to William P. Boyd, the son of the defendant. William P. Boyd, at the time the services were rendered, was thirty-two years old ; had his home at the house of his father, and was a member of his family. In addition to the evidence given, the defendant offered to prove that William P. Boyd was engaged in business for himself, and had property of his own ; and that this was known to the plaintiff, who resided near him. The error of which the defendant chiefly complains, is in the answers to the first and second propositions of the plaintiff's counsel. The court

[Boyd v. Sappington.]

say: " but it is contended, on behalf of the plaintiff, that the services set forth in the statement were rendered to the son, while a member of his father's family, at the special instance and request of the father, and that such special instance and request were the inducements to the rendering of the services to the son, who would not otherwise be trusted. If these facts be established to your satisfaction, I think such request would imply a promise on the part of the father to pay a reasonable compensation for the services rendered." This is an affirmative answer to the plaintiff's first and second propositions, founded on the testimony of Col. Samuel Morrison. The witness testifies in substance, that Nicholas Boyd came to his house, when Doctor Sappington was attending some of his children, and requested him to attend his son William, who was lying very ill with the dysentery at his house; that the doctor hesitated, but finally agreed to go; the defendant said it was the wish of his son that he should come. There is no pretence to say that there was an express promise to pay; but a promise has been implied, as an inference in law from the circumstances stated. Taken in connexion with the testimony which was rejected, there is no ground for the presumption that the services were rendered on the credit of the defendant, nor is there any reason to believe that the request was the inducement to the services, and that without this the son would not have been trusted. It was within the knowledge of the plaintiff that the services were rendered to the son, who, although a single man, and residing with his father, was above the age of twenty-one years, was engaged in business for himself, and had property to answer this demand. Had the plaintiff required it, it is very probable the defendant would have assumed payment of the debt without hesitation; if so, the services being rendered at his special instance and request, there would have been a sufficient consideration for an express promise. It is impossible, with any certainty, to tell what may have been the inducement of the plaintiff, whether he believed that the son was not of ability to pay, or whether the father was legally liable. All, then, may have been as represented by the plaintiff's counsel; but, notwithstanding such may have been the understanding on the part of the defendant, this does not affix any legal responsibility to the transaction. There is nothing in the special circumstances relied on to take it out of the general principle; and it is very clear, that had the defendant been a stranger, however urgent he may have been, and whatever opinions the physician may have formed as to his liability, he would not have been chargeable, without an express engagement to pay; as, for instance, in the case of an innkeeper, or any other individual whose guest may receive the aid of medical advice. A different principle would be very pernicious; as but very few would be willing to run the risk of calling in the aid of a physician, where the patient was a stranger, or of doubtful ability to pay. It has been already intimated, that the court were in error in rejecting the evidence in the defendant's se-

[Boyd v. Sappington.]

cond bill of exceptions. It must, however, be remembered, that this testimony can only be material on the question whether there is evidence of an express promise. It would have a bearing, although a slight one, on that point, as it would show there was nothing in the circumstances or condition of the son, which would make it necessary or prudent for the plaintiff to exact, or for the defendant to make, such a promise. If the testimony was believed, it is not probable that the hesitation of which the witness speaks, arose from any apprehension of the inability of William P. Boyd to make full compensation for his services. It would be unusual, to say the least of it, for a father to make, or a physician to exact such a promise, under the circumstances stated.

Judgment reversed, and a *venire de novo* awarded.

IV.—2 G

# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

NORTHERN DISTRICT, JULY TERM 1835.