## WILLIAM P. DEANE *vs.* RALPH ANNIS.

Where a minor son had left the house of his father against his will, and had refused to return at his request, but on being taken sick had returned home, and had been received by him; the father was held liable to the physician for medical attendance upon the son at the house of the father and with his knowledge and assent, on an implied promise, without proof of any express one.

EXCEPTIONS from the Court of Common Pleas.

*Assumpsit* for a bill of $26,50 for medical attendance and medicine furnished the defendant's minor son. This son had left the father's house about a year before his sickness, and had lived in the neighborhood laboring industriously at several places, was a steady boy, but dying of the sickness left no property, excepting his clothing. On being taken sick the son returned to his father's house, and there remained until his death. The father, who was a man of

property, went with the son to the house of the plaintiff, a physician in *Bangor*, to obtain medical assistance, and it was then understood by them that the plaintiff was to visit the boy at his father's house.   There was testimony introduced by the plaintiff to show the liability of the defendant, and by the defendant to show, that the son had left his house against the consent of the father, and had refused to return at his request.   No express promise by the father in words, was proved, to pay the plaintiff, nor that the father notified the plaintiff, that he did not expect to pay him.

The plaintiff's counsel offered to prove, that the defendant had treated his whole family with harshness and cruelty.   This evidence was objected to by the defendant, and *Perham J.*, before whom was the trial, ruled, that the plaintiff might show the defendant's treatment of this son, but not of the rest of the family.   The plaintiff's counsel requested the Judge to give the following instructions, viz.   " If the medical services rendered by the plaintiff were necessary to the son in the circumstances in which he was placed, the plaintiff is entitled to recover."   The Judge did not thus instruct the jury, but did instruct them, " that the father by law is liable for the support and education of his minor son, and in return he is entitled to reverence, respect, and service from his son ; that if the son, during his minority leave his father against his will to seek his own fortune, or to avoid domestic restraint, he carries no credit with him, and the law will imply no promise to pay by the father even for necessaries.   But if the father neglect his duty, and permit his minor son to go abroad without providing for him, and a stranger supplies him with necessaries, the father is bound to pay, the law will imply a promise."

After the cause was fully committed to the jury, and they had deliberated sometime, this written request was sent into Court by them.   " The jury wish to inquire, whether the father incurred any liability in point of law in going with his son, and consulting the physician, there being an express understanding, that the physician should visit him at his father's house."   To which the Judge returned, " Not unless this fact connected with the other circumstances satisfies the jury that he undertook and bound himself."   The jury then returned into Court with a verdict for the defendant. To the foregoing rulings, doings, and instructions of the Judge the plaintiff excepted.

*T. P. Chandler,* for the plaintiff.

1. The general rule is, that the father is bound to provide his minor child with necessaries. 13 *Johns. R.* 480 ; 4 *Mass. R.* 97 ; 2 *Mass. R.* 415 ; 2 *Dessaus.* 94. The only exception is, where the minor has left the country, as in *Angel* v. *McLellan,* 16 *Mass. R.* 28. The instruction requested should have been given.

2. The evidence offered and rejected should have been admitted to explain the cause of the son's leaving his father's house.

3. The Judge erred in sending written instructions into the jury room without calling them into Court. 1 *Pick.* 337 ; 13 *Johns. R.* 487 ; 1 *Cowen,* 258.

4. The written instructions given by the Judge were wrong, the jury had a right to imply a promise from the acts of the father, without any express one. The instructions required an express promise to be proved.

*Abbott,* for the defendant.

The general rule has been rightly stated, but the exception is much too limited. The true one is, that whenever the minor leaves his father's house against his consent, the father is under no more obligation to support such minor, than any other person. It is not true, that the only exception to the rule is, when the minor leaves the country, nor does the case referred to authorize any such inference.

The Judge allowed any improper treatment of this son to be proved, which was going quite far enough.

The instructions sent by the Judge to the jury were merely a repetition of those already given, and done in open court, and in the presence of the plaintiff's counsel without objection.

The instructions given were correct, being in substance, that if the jury were satisfied, that the defendant intended to employ the plaintiff, he was liable to pay him for his services, and did not require an express promise.

After a continuance, the opinion of the Court was drawn up by

WESTON C. J. — The minor child of the defendant, to whom medical aid was afforded by the plaintiff, had left his father's house against his will, and had, prior to his sickness, refused to return, although thereto required. Undutiful as he was, in thus refusing to

Deane *v.* Annis.

obey the lawful commands of his father, he had redeeming qualities. The case finds he was steady and industrious; and that he labored actively for his support. At length came the sickness, of which he died. Destitute as he found himself, and unable to procure medical attendance, he desired to be carried to the parental roof, that he might obtain the desired relief through the agency of his father. He was conveyed there; and thereupon his father carried him to *Bangor*, for medical advice. While there he was active in procuring it; and manifested such an interest in his son's case, as became a father. No one deserving the name, could refuse to receive a son, under such circumstances. He was thus restored to the parental protection. The fugitive had returned; I will not say prodigal, for he did not deserve that imputation. The child was forgiven, as he ought to have been. His fault should have been deposited in the earth, which covers him. It reflects little credit upon the father, to exhibit it in the face of the public, with a view to escape some of the expenses of his last sickness, incurred in part at least at his request.

After the son surrendered himself to his father, and sought his aid and assistance, we entertain no doubt he became liable for the medicine and advice, furnished by the plaintiff; more especially as he went with his son, and was active in consulting the plaintiff, as a physician. When therefore the counsel for the plaintiff requested the Judge to instruct the jury, that he was entitled to recover, we are of opinion, that they should have been instructed that he was so entitled, to the extent before intimated. The exceptions are accordingly sustained, and a new trial granted.

---

**NOTE.**

But a request by a father to a physician to attend his son, then of full age, and sick at his father's house, raises no implied promise on the part of the father to pay for the services rendered. *Boyd* v. *Sappington*, 4 *Watts*, 247.