Sweet Water Manufacturing Co. vs. Glover.

SWEET WATER MANUFACTURING COMPANY, plaintiff in error, vs. THOMAS C. GLOVER, defendant in error.

[1.] When one white man employs another to work for him, it is not an implication or incident that the employer shall pay the employee's physician's bills; it would require an express contract to create that obligation.

[2.] No sayings of an agent are admissible against his principal, except what he says concerning his appointed business while he is doing it—*dum fervet opus*.

Certiorari, in Campbell Superior Court. Decision by Judge HAMMOND, April, 1859.

Thomas C. Glover, the defendant in error, a practicing physician, brought suit against the Sweet Water Manufacturing Company, the plaintiff in error, in a Justice Court, on an account for medical services rendered to an employee of said company.

It appeared, from the evidence, that William E. Gould was the superintendent of the working hands in said factory; that *Russel Paine*, one of the hands at work under Gould's superintendence, got his arm injured by the machinery; that doctor T. M. Howard was called in to see him; that it became necessary to amputate his arm, and doctor Howard requested the assistance of doctor Cochran, and doctor Glover, the defendant in error, and Mr. Gould sent for them; the operation was performed, and the patient, Paine, died in a few days thereafter. Glover sued the company for his services thus rendered, amounting to forty one-dollars.

*Dr. Howard* testified before the Justice Court, that when he was first called in, Gould told him to make his charge against the company, as it was bound to pay him, and not to charge anything to Paine. Upon the return of W. J. Russell, who was the principal agent of the company, he informed him of what Gould had said to him, and Russell made no express ratification or objection, and they continued their attention to the case.

Upon objection to the sayings of Gould, until his authority was proved, *T. B. Bobo* was called as witness, who testified that the hands of the factory were under the control of Mr. Gould, and he acted as agent; that he bought cotton for the factory, &c. It was also proved, that in the absence of Russell, Gould had full authority to buy cotton; that at the time Paine was injured, and the physicians were called in, Russell was absent, and Gould seemed to be acting as agent, and controlling every thing about the factory. Upon this proof the Justice let in the sayings and declarations of Gould.

*Joseph Paine,* the father of Russell Paine, testified that his son was hurt by the machinery while working in the factory, and that he called in the store one day and wanted some articles, and Mr. Russell told him that he owed about seven dollars, and that the company had to pay his son's doctor's bill, and that he could get nothing more; that he had been discharged from the employment of the company, &c.

It was further proved, that Russell had given an order, which had been filled, for brandy for the patient, and had since agreed to pay it. This testimony was objected to as irrelevant. The objection was overruled, and the evidence let in for what it was worth.

*G. T. Coval* testified, that when Paine was employed he was warned of the danger of the wheel by which he was injured, and that Gould had nothing to do with the outside business of the factory.

*J. L. Alden* testified, that Russell was absent, but did not think that Gould had any power to send for a physician for the factory hands, and did not suppose that Governor McDonald would have, although he was head agent of the factory.

The jury found for the plaintiff the full amount of his account.

Whereupon defendant filed his exceptions, and brought

the case by certiorari to the Superior Court, alleging the following errors in the Justice Court:

1st. The admission of the sayings of Gould, who was not a party, nor the general agent of the company, but only in their employ as superintendent of the hands engaged in the factory.

2d. The admissions of the sayings of Russell, who was only general agent to transact business connected with the factory, and the employment of physicians being no part of said business.

3d. The admission of the order signed by Russell, agent, to furnish brandy to the patient.

The Court dismissed the certiorari and affirmed the judgment of the Justice Court.

To which decision, counsel for plaintiff in certiorari excepted.

STONE & FITCH; and EDGE, for plaintiff in error.

BUTT, *contra*.

*By the Court.*—STEPHENS J. delivering the opinion.

The only question in this case is as to the legality of the evidence which was objected to, but admitted. We think it was clearly inadmissible. The Judge below puts its admission upon the ground, that it was as much within the business of the company to have its operatives repaired when injured at their work, as it is to have the machinery repaired when it is out of order. This would be the exact law of the case, if the company's operatives were its slaves, instead of being free white men and women. A master's business and duty is, to make his slave work, and then to furnish him all that is necessary for him. But when the relation of employer and employee exists between white people, the *contract* of the parties, is the standard of their duties. If

VOL. XXIX.—26

one white man employs another white man to work for him, and *agrees* to pay his doctor bills, he is bound to pay them, and if he *don't* agree, he is *not* bound. In this case as in all others between white people, the question is, did the company *agree* with its operatives, to pay their physician's bills? If they did, then it was a part of the agent's business to send for a physician whenever an operative needed one, and it was the duty of the company to pay the bill. If they did not so agree, then they had no duty about it. When a white man engages to work for another, he undertakes to furnish the labor and to do all the repairs that are needful to keep up the supply of labor. This is the implication, and it would require an express contract to the contrary, to overcome it. Now to find out what the contract was, we must look to the contract itself. The only evidence offered concerning the contract, was the sayings or acts of divers of its agents, uttered and done, *long after the contract had been made.* There was some *gradation* of agents, made in the argument, but that is wholly immaterial. Neither Mr. Gould, nor Mr. Russell, nor Gov. McDonald, nor any other agent of the company, could say anything to bind them, except what he says about his appointed business, while he is doing it. It must be said about his appropriate work, and said *dum fervet opus.* Whatever was said while the contract was making, is evidence, but what was said about it afterwards was no better coming from an agent than from anybody else. The principle on which an agent's sayings are admitted against his principal at all, is, that they are part of the *res gestæ.*

Judgment reversed.