Forger, L
The plaintiff sues to recover of the defendant for professional services rendered as a physician in attendance upon the daughter of the defendant. To maintain his action, he must show a promise by the defendant, express or to be implied, to pay him therefor. He is not able to show an express prpmise so to do. Though Hartine, the son-in-law of the defendant, called in the plaintiff, assuming to act therein for the defendant, no authority so to do is shown; authority is denied by the defendant, and no attempt is made to contradict him therein by Martine or any other witness.
The plaintiff must then rely upon having shown such facts and circumstances as will sustain the law in implying therefrom a promise by the defendant.
Prominent among those which are relied upon is the fact that the patient was the daughter of the defendant. And were she a daughter for whom, by reason of her minority and dependence upon him, the defendant was under a natural obligation to provide necessaries, this fact would be strong, with others to be mentioned, to sustain an implication of a promise. (See 13 J. R. [infra].) But the relations between the defendant and her were not such as that there was upon him such obligation. She was much past her majority; she was married; she had lived with her husband and their children, separately from her father, in a house of their own; she was, at the time, living with her husband and their children. Her husband was bound primarily to supply for her all that she needed. Though she was brought from their own house to that of the defendant, it was at her mother’s instance and for a special purpose, that of having her under the *260 immediate care and attention of her mother. No reason for the removal, other than this, is shown. This did not impose upon him any greater general obligation than existed before. Nor did it give ground for the law to imply a special obligation. Again, the interest exhibited in the case by the defendant to the plaintiff; his recital to him of a history of her trouble; his presence when the plaintiff made his professional calls, alone and in consultation ; his receiving directions as to treatment; his recognition, to others, of the fact that the plaintiff was in attendance; his recital, to others, of the plaintiff’s opinion of the patient’s condition; and his knowledge of the frequency and length of continuance of the professional visits of the plaintiff, without any disclaimer on the part of the defendant of liability, are relied upon as circumstances making a basis for an implication.
It is true that particular acts will sometimes give rise to particular obligations, duties and liabilities. But the party whose acts are thus to affect him must be in such predicament as that those acts have, of legal necessity, a significance attached to them, at the time, which he may not afterward repel. Broom on Common law was cited by the court below as authority for the above rule, and it was applied to this case. But the illustration he gives of the rule shows that it is in a different case that it operates, viz.: “ If I employ a person to do any business for me, or to perform any work, the law implies that I undertook or contracted to pay him as much as his labor deserves.”
It is true that a person may not avail himself of the benefit of services done for Mm without coming into an obligation to reward them with a reasonable recompense. But he cannot be said, in the meaning of the law, to avail himself of services as so done when they are not for his individual benefit, nor for that of any one for whom he is bound to furnish them. The acquiescence of one in the rendering of service or benefit to another, not entitled to call upon him therefor, is not equivalent to an acknowledgment that it is rendered at Ms request. So far as legal responsi *261 bility was concerned, the defendant, though the father of the patient, was a stranger to her and to her necessities. He could neither require of her, nor be required upon by her. It has been held that a special request by a father to a physician to attend upon his son, then of full age but lying sick at the father’s house, raised no implied promise on the part of the father to pay for the services rendered (Boyd v. Sappington, 4 Watts, 247); and so in Veitch v. Russell (3 Ad. & Ell. [N. S.], 927) it is said: A physician attends in every case on request; that fact alone is not sufficient for the inference of a special contract; and see Sellen v. Norman (4 Carr. & P. [N. P.], 284). Still less, where there has been no special request by the father to the physician, and no more than acquiescence in his calls. It was the duty of the plaintiff to know or to learn the true legal status of the patient, and what were her true legal relations to the defendant; and he cannot rely upon any seeming legal and necessary dependence of her upon him. In the case of minor children, even, the law imposes this duty upon those who would furnish them with necessaries, relying upon the credit of their fathers and seeking to charge them. (Hunt v. Thompson, 3 Scam., 179; Van Valkinburgh v. Watson, 13 J. R., 480.) A fortiori, is it so in the case of an adult married daughter living with her husband so that all these circumstances, upon which stress is laid in behalf of the plaintiff, afford no support to his claim.
As it would be unnatural for the parent of an invalid child, . though legally emancipated, or for an intimate and confidential friend of her, not to know the rise and course of her malady, not to be interested in the state of it as disclosed at any time to skilled inspection, not to be so anxious as to be in waiting when scientific skill was to be applied for its cure, not to be ready to receive directions for treatment in the intervals; so it is not to be implied in the one case more than in the other that, from these manifestations, because unaccompanied with an express repudiation of liability, a liability may be implied. They are to be referred to natural *262 affection and friendly sympathy, rather than to an acquiescence in the rendition of a personal benefit, or counted as acts done under a sense of legal obligation.
Then there is the assertion in the testimony of the plaintiff, that he told the defendant that he (the plaintiff) wanted to call in Dr. Clark in consultation, and that the defendant assented to it and expressed a wish to be present. The defendant denies this. But, assuming it as proven, is it a fact which raises an implied promise to pay the plaintiff for his own service ? Does it even imply a promise to pay Dr. Clark for his ? Doubtless the usage is such with the medical profession, that the physician called to consult with him who is in attendance, with the consent of the person who has employed the latter, is in contemplation of law in the hire of that person. That usage is not shown, however; and if it be assumed to exist, still the assent of the defendant to the calling in of Dr. Clark, and his expression of desire to be present when he came—until he is shown to have employed the plaintiff—is a basis too weak for an implication of law, that he promised to pay his consultation fees. Still less is it a fact from which to imply a promise to pay the plaintiff.
The fact that a bill was rendered to the defendant from the books of the plaintiff is not of weight. That was the act of the plaintiff. It could not charge the defendant until acknowledged or acquiesced in by him as well founded. It appears that a note was written by the defendant, responsive to the presentment of the account. The contents of it are not given in the testimony. It may have been an acknowledgment of liability, and a promise of payment. It may have been a denial. The inference most natural is that it was the latter.
It is in testimony, from the mouth of the defendant, that he had employed other physicians to attend upon his daughter. From this may be inferred a willingness on his part to provide her with requisite medical attention. But does it raise an implication of law, that he procured for her the services of any other particular physician, who did, in fact, attend upon her, and that he promised to pay therefor ? I think not.
*263 There is -given, in the testimony, conversations of the defendant with Mr. and Mrs. Lowther. These, present declarations of the defendant, that he had some idea of sending for the plaintiff, that he thought that he would go and see the plaintiff, and that he thought he would send for him and see what he had to say about it. These declarations indicate purposes not yet fixed and determined in the mind of the defendant. It is certain that one of them was not carried out, for he never went to see the plaintiff. Nor do I think that there is firm ground given by these expressions on which to base an inference that he sent for him. And, even had he gone himself and requested the plaintiff to come, we have seen above that the law will not therefrom raise an implied promise to pay for the services.
Thus far there has been only the consideration of the testimony on the part of the plaintiff. But it appears in the testimony of the defendant that he never employed Dr. Crane, nor authorized his employment. This testimony is criticised as being to a conclusion of law, or that there was no express contract, rather than of a matter of fact, or of acts from which a contract might be implied; and that the defendant has, therefore, sworn only that he did not make an express contract of employment with the plaintiff. It is a little inconsistent, however, that, when the same witness uses the same phrase as to other physicians, it is held to be proof of an actual employment by him of them. The phrase used by the defendant (“employ” and “employed”) is of so common use, entering so much into the ordinary and frequent speech of men, that it cannot be fairly said that the defendant meant no more than that he had not made a bargain legally binding. I think he meant that, as a fact, he had not asked for the services of the plaintiff, and had not, in fact, taken on the obligation to pay for them.
The defendant’s testimony is, in some particulars, in conflict with that of the plaintiff and some of his witnesses. How much or how little credence was to be given to it on this account it is not easy to say, taking it from the papers alone, *264 without the aid of the presence and manner of the witnesses, and the many evanescent indicia which appear only to the tribunal before which the witnesses stand and speak. A close examination of the testimony shows several disagreements in the testimony of the witnesses for the plaintiff; inadvertencies or mistakes of recollection, probably, but enough to prevent a hasty application, to any witness, of the maxim urged by the learned counsel for the plaintiff)/«?<sw.s in uno, etc. The referee has either given some credence to the defendant, or he has thought that the case, as made by the testimony of the plaintiff, on whom was the burden of proof, was too slight to warrant a judgment in his favor. And is not this court, in such a case as this, to give some weight to that feature of it ? This is an appeal from an order of the General Term, reversing the judgment of the referee and ordering a new trial. The order of the General Term states that the judgment of the referee was reversed upon questions of fact. It is apparent, from the case, that it was reversed upon questions of fact alone. In such case, the question is open for review in this court. (Code, § 292.) It is not the same question as if we inquired whether we should have found the same facts in the same way as did the referee. It is, rather, are we so certain that the referee was in error, upon the facts, as that we will assume to reverse his judgment? If it appears that his conclusion is not against the weight of evidence, that it might well have been either way, or that the testimony is slight on which to found a conclusion contrary to his, then the consideration that he saw the witnesses, and had the assistance of their presence before him, uttering orally to him their testimony, should lead to a deference to his judgment. (Westerlo v. Dewitt, 36 N. Y., 340.) 1 think that this is such a case. The affirmative testimony, on which the referee may have based his judgment, is that of the defendant. It is positive in denial of any liability, or of any act incurring it. That the referee found for the defendant is presumptive that he gave credit to his testimony. And, though there is incongruity between it and that of the plain *265 tiff and some of his witnesses, there may have been reason in the manner of the witnesses why the referee, without imputing to any, graver fault than mistake or want of recollection, felt compelled to give his belief to the dental of the defendant. And, however that may be, it is quite certain that the plaintiff sought to succeed upon testimony which, it must be admitted, is very slight.
I am, for the reasons above stated, of the opinion that the judgment of the General Term should be reversed, and that of the referee be affirmed.
All concur, except Bapallo, J., not voting.
Order reversed, and judgment accordingly.