Meisenbach v. The Southern Cooperage Co.

ALBERT H. MEISENBACH, Appellant, v. THE SOUTHERN
COOPERAGE COMPANY *et al.*, Respondents.

St. Louis Court of Appeals, May 5, 1891.

1. **Contracts, Implied:** SUMMONING A PHYSICIAN. The general
rule is that, where a person requests the performance of a service,
and the request is complied with and the service performed, the
law raises an implied promise to pay the reasonable value of the
services; but this rule does not obtain, where a person requests a
physician to perform services for a patient, unless the relation of
that person to the patient is such as raises a legal obligation on
his part to call in a physician and pay for the services.

2. **Corporations:** LIABILITY TO SURGEON SUMMONED TO ATTEND AN
EMPLOYE. An employe of a corporation was injured while at
work, and thereon the superintendent of the corporation caused a
surgeon to be summoned to attend him. *Held*, that the corpora-
tion was not liable for the services of the surgeon, in the absence
of evidence that its superintendent had been authorized by it to
summon medical aid in the case of emergency.

*Appeal from the St. Louis City Circuit Court.*—HON.
JAMES E. WITHROW, Judge.

AFFIRMED.

*John B. Roeder*, for appellant.

*W. E. Fisse*, for respondents.

THOMPSON, J.—This action is brought by a sur-
geon to recover the reasonable value of his services in
and about the treatment of Jacob Eichacker, who was
severely hurt while employed by the defendant corpor-
ation. The defendant Fredericks was the superin-
tendent of the corporation. At the close of the
evidence the court instructed the jury that the plaintiff

Meisenbach v. The Southern Cooperage Co.

could not recover ; and the only question for considera-
tion on this appeal is, whether this was a proper direc-
tion.

There was no evidence as to the character or
powers of the corporation, and no specific evidence as
to the scope of the authority of Mr. Fredericks,
except that he was its superintendent, and, to use the
language of a witness for the plaintiff, "managed the
whole thing himself." The evidence was to the effect
that, Mr. Eichacker having received a severe hurt at
the defendant's works, the superintendent ordered
another employe to go for the plaintiff. The superin-
tendent did not tell the messenger that either he or the
company would be responsible for the services of the
plaintiff. He merely sent him to get the doctor.
When the plaintiff arrived at the company's works,
Mr. Weindel ( who was the president of the company ),
Mr. Fredericks, the superintendent, and also the patient
were there. The patient was very pale, wrapped
up in some way, and covered with blood. He was
not unconscious. The plaintiff told Mr. Weindel that
the patient's arm would have to be amputated, and
that they would have to take him to his home. Soon
after another doctor arrived, who had been telegraphed
for. The plaintiff and this other doctor, the patient
having been removed to his home, performed an ampu-
tation of his arm, the plaintiff performing the opera-
tion. The arm was so lacerated that it had to be taken
out at the shoulder socket. The plaintiff attended
upon the patient for several months, during which
time he never communicated with the defendant corpo-
ration, or with Mr. Fredericks, about the question of who
was to be responsible for his services ; he had no dis-
tinct understanding with either upon that question.
He afterwards had some conversation about the matter
with Mr. Weindel, who told him that the company
would pay him for his first services,—by which we

understand his first call, but he denied all further liability on the part of the company.

We take it that the law will not imply, upon this evidence, a contract either on the part of the corporation or on the part of Mr. Fredericks to pay for these services. The general rule, no doubt, is that, where a person requests the performance of a service, and the request is complied with and the service performed, the law raises an implied promise to pay the reasonable value of the services. But this implication does not obtain, where one person requests a physician to perform services for a patient, unless the relation of the person making the request to the patient is such as raises a legal obligation on his part to call in a physician and pay for the services. Where a husband calls in a physician to attend upon his wife, or where a father calls in a physician to attend upon his minor child, the law implies a promise on his part to pay the reasonable value of the services, because there is a legal obligation on his part, in either case, to furnish necessaries for the patient's benefit. But no such implication arises where one calls in a physician to attend upon a stranger, or upon one to whom he is under no legal obligation to furnish necessaries. It has even been held that a special request by a father to a physician to attend upon his son, then of full age, but lying sick at the father's house, raised no implied promise on the part of the father to pay for the services. *Boyd v. Sappington*, 4 Watts (Penn.) 247. That such a request does not raise an implied promise, where there is no legal duty on the part of the person making the request toward the patient is shown by several other cases : *Veitch v. Russell*, 3 Ad. & Ell. ( N. S.) 927 ; *Sellen v. Norman*, 4 Car. & P. 80 ; *Crane v. Baudouine*, 55 N.Y. 256 ; *Smith v. Watson*, 14 Vt. 332.

The reason and policy of this rule are obvious, especially in cases like the present. When a person is dangerously wounded and perhaps unable to speak for

himself, or suffering so much that he does not know how to do it,—any person will run to the nearest surgeon in the performance of an ordinary office of humanity. If it were the law that the person so going for the surgeon thereby undertakes to become personally responsible for the surgeon's bill, and especially for the surgeon's bill through the long subsequent course of treatment, many would hesitate to perform this office, and in the meantime the sufferer might die for the want of the necessary immediate attention. Nor is there a common and fair understanding that the person making the request, or ordering it to be made, in behalf of the sufferer, under the circumstances, assumes responsibility for the surgeon's bill. In this case, if it had been the expectation of the plaintiff to hold either the corporation or its superintendent to responsibility for his bill for this entire course of treatment, an obvious suggestion of business prudence would have required him to communicate with them, and have an understanding upon the subject.

The offer of Mr. Weindel to pay for the first part of the services—which is understood to mean for the first visit, or what was done upon the first call—can be construed no more than in the nature of an offer to compromise, and not as an admission of legal liability. His offer was made after the services had been rendered ; it did not involve the admission of any distinct fact upon which the law predicates a liability on the part of the corporation to pay for the services ; and it is not, therefore, evidence upon which the court could have submitted such a liability to the jury.

The case of *McCarthy v. Railroad*, 15 Mo. App. 385, is cited and relied on by the plaintiff. That case was in some respects similar to this. But that case differs from this in two essential points. There was evidence in that case tending to show that the defendant's superintendent told the plaintiff to go on and treat the patient. The superintendent himself also

admitted that he had authority from the company to call in a physician in case of an emergency. Here, there is no evidence tending to show that Mr. Fredericks had such authority, and none tending to show that he told the plaintiff to go on and treat the patient.

Being of opinion that there was no case upon the evidence to be submitted to the jury, it is ordered that the judgment be affirmed.    All the judges concur.