## SPELMAN, APPELLANT, v. GOLD COIN MINING & MILLING COMPANY, RESPONDENT.

### (No. 1,347.)

(Submitted October 10, 1901.   Decided November 11, 1901.)

*Corporations—Officers—Principal and Agent—General Manager of a Mining Corporation—Authority—Contracts for Medical Attendance on Employes—Ratification.*

1.  A principal is bound only by the authorized acts of his agent, and prior authority or subsequent ratification must be shown in order to render the principal answerable *ex contractu* for the conduct of his agent.

2.  The fact that a certain person is general manager of a mining company does not, in and of itself, imply authority in him to bind the company in matters other than those of its ordinary business affairs.

3.  Where employes of a mining company, while working in its mines, suffer bodily injury by the explosion of a blast, and it does not appear that the company was in anywise at fault, the secretary and general manager of the company has no implied power, by virtue of his office, to bind the company by a contract for medical attendance on such injured employes.

*Quaere:*  Whether, in a case where an employe is injured through the actionable negligence of the company, the general manager of a mining company can bind his principal by such a contract?

4.  Where plaintiff sought to recover for medical services rendered to employes of a mining corporation by virtue of a contract with the manager and secretary, testimony by a physician, whom plaintiff had called to his assistance, that he was paid by a check on some part of which appeared the name of the corporation, and that it was his impression that it was signed by the corporation, "per some one else's order," was not sufficient evidence of a ratification by the corporation of the secretary's contract.

*Appeal from District Court, Deer Lodge County, Theodore Brantly, Judge.*

ACTION by J. F. Spelman against the Gold Coin Mining and Milling Company.   From a judgment for defendant, plaintiff appeals.   Affirmed.

*Messrs. O'Leary & Maiden,* for Appellant.

*Mr. J. R. Boarman,* for Respondent.

MR. JUSTICE PIGOTT delivered the opinion of the court:

This was an action to recover judgment for the reasonable value of services alleged to have been rendered by the plaintiff and one McKenzie, as physicians and surgeons, at the special instance and request of the defendant, a corporation organized for the purpose of mining and engaged in that business in the county of Deer Lodge, Montana. The defendant denied that it ever employed the plaintiff or McKenzie and traversed the allegation of the complaint touching the reasonable value of the services. The evidence disclosed or tended to show the existence of the following facts: One Shafner was the president of the defendant, one Loomis its secretary and general manager, and one Beaton its assistant manager and foreman. On January 13, 1898, Beaton and two other employes of the defendant were injured by the explosion of a blast in the Gold Coin mine owned by the defendant and in which they were then working. On the same day the men were taken to a hospital in Anaconda where they received at the hands of the plaintiff and McKenzie medical and surgical attendance and treatment for several months. The hospital had no contract with the defendant, nor were there any relations between it and the defendant. The plaintiff was surgeon to the hospital. After the first examination of the men the plaintiff suggested to Beaton the employment of a specialist in diseases of the eye and that it would be well to call in one Grigg. To this Beaton assented, saying that the defendant would pay all the expenses incident to the treatment of himself and of the other men. Thereupon the plaintiff called in Grigg, who gave to the eyes of the men such attention as was necessary. On the 14th, which was the day after the accident, Loomis telegraphed to the plaintiff to spare no expense in giving Beaton the best possible nursing and attention, and if the other men who had been injured needed surgical and hospital treatment, to provide it, and he would pay all the expenses. Thereafter, and while the plaintiff was professionally attending Beaton and his companions, Loomis orally assured

the plaintiff and McKenzie that the defendant would pay them. McKenzie assigned his account to the plaintiff. Grigg's bill for the services rendered by him was paid in part by Beaton, and in part by a check on some part of which appeared the name of the defendant, Grigg testifying that he did not know where the name of the defendant appeared thereon, but it was his "impression that it was signed by the Gold Coin Mining Company per some one else's order." On motion of the defendant the court granted a nonsuit for the reason that no authority had been shown in either Loomis or Beaton to employ the plaintiff or McKenzie on behalf of the defendant, to attend the men injured, that the evidence did not show that the employment of the plaintiff or his assignor came within the scope of the authority of either Loomis or Beaton, and that therefore the plaintiff failed to show the liability of the defendant. The order granting the motion was followed by a judgment in favor of the defendant, from which and from an order refusing a new trial, the plaintiff appeals.

Several errors are specified, but the question presented by the order granting the nonsuit is the only one that requires consideration. The plaintiff contends that Loomis, the general manager of the defendant, was, by virtue of his office, empowered to employ the plaintiff and McKenzie in the name of his principal and to bind it by his promise to pay them. He insists that authority to employ physicians and surgeons to attend upon miners injured while engaged in working for the defendant was impliedly delegated to Loomis by his appointment to the office of general manager, and that neither express authority nor subsequent ratification by the company need be shown; and that the defendant paid a part of Grigg's bill, thereby ratifying the employment of the plaintiff. It is argued that Loomis in his capacity of secretary and general manager of the defendant was its representative and in the transaction of its ordinary affairs might do whatever the corporation could do within the scope of its powers, and that the general manager of a mining company must necessarily receive full power to act for the

company in all emergencies. In short, the contention is that the law presumes the general manager of a mining corporation to be clothed with the power which Loomis attempted to exercise, and that courts must take judicial notice of such power.

A principal is bound only by the authorized acts of his agent, and prior authority or subsequent ratification must be shown in order to render the principal answerable *ex contractu* for the conduct of his agent. The agent's authority may be either express or implied; but the act done or the promise made by the agent must be within the powers expressly or impliedly delegated to him; though the act was not authorized at the time it was done, it may be ratified subsequently by a competent principal. Powers of the agent cannot be enlarged by his unauthorized representations or promises. The principal is bound, however, by the acts of the agent who is held out by him as possessing authority to do the act which he does; in such case his acts are the principal's when done under such apparent authority, and the principal is estopped to deny the agent's authority when the person dealing with the agent relied upon the holding out. The implication of a promise on the part of one who requests the performance of medical or surgical services for another, to pay for them, does not arise "unless the relation of the person making the request to the patient is such as raises a legal obligation on his part to call in a physician and pay for the services" (*Meisenbach* v. *Southern Cooperage Co.,* 45 Mo. App. 232; *Boyd* v. *Sappington,* 4 Watts, 247; *Crane* v. *Baudonine,* 55 N. Y. 256); to make him liable there must be an express promise or engagement to pay by the one who called in the surgeon or by his authorized agent. These general rules are applicable to corporations as well at to natural persons. (*Butte & Boston Consol. Min. Co.* v. *Montana Ore Purchasing Co.,* 21 Mont. 539, 52 Pac. 375; *Trent* v. *Sherlock,* 24 Mont. 255, 61 Pac. 650.) Both alike are bound by the acts of their agents done within the scope of the authority ostensibly delegated.

In the case at bar certain employes of the defendant while

working in its mine, were injured by the explosion of a blast. It does not appear that the company was in any wise at fault,— the employment of the plaintiff by Beaton and Loomis, who assumed to act in the name of the company, being (of itself) no evidence that the defendant was negligent or that in their opinion it was responsible for the accident. The men were removed to a hospital with which the defendant had no connection or contract whatever, and were there treated by physicians and surgeons to whom the general manager of the defendant made promises to the effect that the defendant would pay them. There was nothing tending to show that the general manager had theretofore assumed so to bind the defendant, there was nothing to show that the corporation had in any manner whatever expressly delegated to the general manager authority to exercise such power, nor was there any evidence that general managers of mining corporations habitually exercised that power. Can the court declare, upon this state of facts, that the general manager of the defendant possessed authority to bind the defendant by employing physicians and surgeons? We think not. While there can be no doubt of the implied power of a corporation of the class to which the defendant belongs "to incur expense on account of injuries received by its employes in the line of their employment, in the absence of any express statutory grant of such power" (5 Thompson on Corporations, Sec. 5840), the law unquestionably is that such a corporation does not owe to its employes any implied legal duty to do so. Without attempting to enumerate every duty of the master, we may say, in general terms, that a corporation, like any other master, discharges its primary duties as master to the servant when it furnishes him with a reasonably safe place in which to work, reasonably safe tools with which to work, and uses reasonable care in selecting fellow servants, or, rather, is free from negligence in these three respects. It would not seriously be asserted that a natural person owes to his servant or employe the legal duty to furnish medical or surgical aid to him or to nurse him when sick or disabled, or when injured while working for the master

or employer,—indeed, we apprehend the law does not impose such obligation upon him in any event without an agreement by which he assumes such burden; for instance, a servant suffers a bodily injury through the actionable negligence of the master; although the master must answer to the servant in damages for all loss proximately resulting, including physicians' and surgeons' charges, yet the law does not require him to engage their services or to pay them for performing the services, —he may, if he chooses, employ physicians, surgeons and nurses and promise to pay them, and of course he would then be liable directly to those employed. Whether or not in such a case as the one last suggested the general manager of a mining company can bind his principal is not necessary to be decided upon this appeal. If he can, the power must rest upon the assumption or theory that in appointing a general manager the company impliedly delegates to him authority to lessen the extent of the injuries inflicted by the principal's wrong and thereby diminish the amount of damages for which the latter would otherwise be liable. As has been said, there is nothing in the case at bar to indicate that the defendant was at fault, or that it had agreed with the wounded men to provide surgeons or physicians for them in case of accident. If the defendant's directors had met and employed the plaintiff and McKenzie to attend the wounded men, they would have bound the defendant; but the directors would not thereby have performed a duty imposed by law upon them or upon the defendant. Beyond doubt the corporation through its board of directors—its governing body—possessed the right at any time to delegate the exercise of this power to any officer or person. Now, the general manager represents the corporation in all matters falling within the scope of the powers actually conferred or which he is held out by the company to possess; "whenever a corporation appoints a general manager or superintendent, by whatever name called, it, by that very fact, impliedly holds him out to the public as possessed of the authority to bind it by contracts which are necessary, proper, or usual to be made in the ordinary prose-

cution of its business." (4 Thompson on Corporations, Sec.
4850; *Georgia Military Academy* v. *Estill,* 77 Ga. 409.) In
*Trent* v. *Sherlock, supra,* we said: "No principle of law is
more clearly settled than that an agent to whom is intrusted by
a corporation the management of its local affairs, whether such
agent be designated as president, general manager, or superin-
tendent, may bind his principal by contracts which are neces-
sary, proper, or usual to be made in the ordinary prosecution
of its business.    *    *    *    The fact that he occupies by the
consent of the board of directors, the position of such an agent,
implies, without further proof, the authority to do any thing
which the corporation itself may do, so long as the act done
pertains to the ordinary business of the company.    *    *    *
Even where the contract in question pertains to matters without
the ordinary course of business, but within the power of the
corporation,—that is, such as is not prohibited by its charter
or by express provision of law,—the authority of the agent may
be established by proof of the 'course of business between the
parties themselves; by the usages and practice which the com-
pany may have permitted to grow up in its business; and by
the knowledge which the board, charged with the duty of con-
trolling and conducting the transactions and property of the
corporation, had, or must be presumed to have had, of the acts
and doings of its subordinates in and about the affairs of the
corporation.'    *    *    *    'There is no reason, and can be no
legal principle, which will put the agent of a corporation on
any different footing than the agent of an individual, in regard
to the same business.' " He cannot, however, bind his principal
by a contract to confer a gratuity or bestow a charity, however
strong the promptings of humanity may be. He acts for and
is virtually the company itself in those matters only which have
to do with its ordinary business and are within the scope of
the duties delegated to him for performance. Unless the limits
of his authority are shown to have been enlarged, the duties
of the general manager are confined to the transaction of the
business of the corporation as distinguished from its mere

ethical duties and consequent imperfect obligations, or supposed charities. The fact that a certain person is general manager of a mining company does not in and of itself imply authority in him to bind the company in matters other than those of business affairs. It may not be said, as matter of law, or declared as a fact judicially known, that general managers of mining corporations are usually clothed with such authority as that assumed by Loomis. So to hold would be to affirm that every general manager may contract with physicians and surgeons in behalf of the mining company for which he is agent, irrespective of the rights of the company and without regard to whether it was at fault. If he has such authority by virtue of his office, then he may bind the company to pay for the services and expenses of surgeons, physicians, nurses and others rendered to and paid out for men who through their own gross negligence have suffered injuries in his company's mines, and and his promise in the name of the company to pay any price that might be agreed upon by him and those employed would (in the absence of fraud) bind the corporation. If such authority inheres in the office of general manager, then, as was remarked by Mr. Justice Graves in *Marquette & Ontonagon Railroad Co.* v. *Taft,* 28 Michigan, 289, Loomis "must be taken to have had not merely the ordinary powers of control and management pertaining to superintendency, but the larger and more imperial power to bind the treasury of the company to bestow what in law would have to be considered as something originally resting on imperfect obligation." If such authority is conferred on a general manager, the court does not take judicial notice of it. Evidence tending to prove it must be adduced.

We are aware of the many cases holding that the general agent, managing agent, general manager or superintendent of a railway company has, by virtue of his office, implied authority to employ, on behalf of the company, physicians and surgeons to attend persons injured by the company, including those injured in the line of their duties while working for it, of which the following are typical: *Walker* v. *The Great Western*

*Railway Company,* L. R. 2 Exchequer, 228; *Atlantic & Pacific Railroad Co.* v. *Reisner,* 18 Kansas, 458; *Pacific Railroad Co.* v. *Thomas,* 19 Kansas, 256; *Atchison & Nebraska Railroad Co.* v. *Reecher,* 24 Kansas, 228; *Toledo, Wabash & Western Railway Co.* v. *Rodrigues,* 47 Illinois, 188, 95 American Decisions, 484; *Toledo, Wabash & Western Railway Co.* v. *Prince,* 50 Illinois, 26; *The Indianapolis & St. Louis Railroad Co.* v. *Morris,* 67 Illinois, 295; *The Cairo & St. Louis Railroad Co.* v. *Mahoney,* 82 Illinois, 73, 25 American Reports, 299; *The Cincinnati, Indianapolis, St. Louis & Chicago Railway Co.* v. *Davis,* 126 Indiana, 99, 25 Northeastern Reporter, 878, and cases there cited; and of some cases in which the contrary doctrine is announced: *Brown* v. *Missouri, Kansas & Texas Railway Co.,* 67 Missouri, 122; *Stephenson* v. *New York & Harlem Railroad Co.,* 9 Duer (N. Y.) 341. Whether the doctrines announced in the class of cases first mentioned would have been applied to mining corporations under the facts here disclosed, we need not inquire. Whatever may be the rule touching the presumptions with respect to the poweis of railway officials, in our opinion a presumption that the general manager of a mining corporation has been clothed with the delegated power to exercise the authority which Loomis assumed to exercise, cannot be indulged. In some of the cases cited the judges seem to have been unconsciously influenced more by considerations of humanity, or moral obligations, and of hardship, than by the law of agency. Legal principles must govern all cases falling within them, without regard to the views entertained by the judges touching the supposed hardship occasioned in a particular instance. (*Sanford* v. *Gates, Townsend & Co.,* 21 Mont. page 290, 53 Pac. 749.)

As to the contention that the company ratified the employment of the plaintiff, suffice it to say that the testimony of Grigg did not constitute sufficient evidence to prove a ratification, and that there was no other evidence tending to show it.

Finding no error in the record, the judgment and order refusing a new trial are affirmed.

*Affirmed.*

The CHIEF JUSTICE, having tried the cause in the court below, takes no part in this decision.