## NATIONAL BANK OF TIFTON *v.* SMITH *et al.*

1. One who contracts with the payee of an accommodation note, executed by a married woman, that on the faith of its security he will indorse a note for the payee for discount at a bank, and receives her note with full knowledge of all the facts, enters into an arrangement to make the married woman ultimately liable to pay the debt of another; and such a transaction will fall within the law's condemnation of contracts of suretyship by a married woman.

2. Before the declarations of an agent are admissible, it must appear that the declarant was the agent of his principal at the time, and also had authority to make the admissions, or that they were made in the course of the transaction, so as to be a part of the res gestæ.

3. The verdict discharged one defendant, and reduced the liability of the other to the extent of his plea of set-off. The evidence authorized (if it did not require) the verdict in favor of the former, and as to this defendant a new trial was properly refused. As to the latter, on account of the admission of incompetent evidence, a new trial is granted.

NOVEMBER 13, 1914.

Complaint. Before Judge James B. Park. Jones superior court. January 19, 1914.

This was an action by the National Bank of Tifton against Mrs. Mary E. James Smith and W. E. James, to recover principal, interest, and attorney's fees, alleged to be due upon a note for $5,000, signed by Mary E. James Smith, payable to the order of the James Manufacturing Company, and indorsed by the James Manufacturing Company and W. E. James. The defendants pleaded, that the note was given by Mary E. James Smith to the James Manufacturing Company, without consideration; that W. E. James negotiated with the Commercial Bank of Macon a loan for $5,000, and procured E. A. Buck to become his indorser thereon, and, to secure Buck, W. E. James deposited with him the note sued on; that after-

wards this indebtedness to the Macon bank was paid in full by W. E. James; and that after the note sued on was past due, W. E. James procured a loan from the National Bank of Tifton for $5,000, which was indorsed by E. A. Buck, who, without right or authority, deposited with the plaintiff bank the note in suit. Mary E. James Smith pleaded that the note in suit was without consideration, and was made by her merely as an accommodation to W. E. James and the James Manufacturing Company, in order that the latter might secure the indorsement of E. A. Buck on notes given to the Commercial National Bank and the American National Bank, of Macon, Georgia; that she was a married woman, and E. A. Buck had full knowledge of that fact and of all the circumstances attending the execution of the note in suit, and the purposes for which it was made; that in substance her contract was one of suretyship, and that she is not liable thereon, by reason of the statute forbidding a married woman to bind her separate estate by a contract of suretyship. W. E. James pleaded that he gave to the president of the plaintiff bank a note for $2,500, signed by his mother, Mary E. James Smith, payable to the James Manufacturing Company, and indorsed by the company and by himself, for the purpose of having the same discounted by the bank; that the bank did discount the note; that he subsequently paid the same to the person for whom the bank had discounted it; and that he never received any of the proceeds of the discount, and he asks for a verdict and judgment of set-off for the amount alleged to have been received by the bank. The jury returned a verdict in favor of Mary E. James Smith, and in favor of the plaintiff against the other defendant, W. E. James, for $2,500 principal, besides interest and attorney's fees. The plaintiff moved for a new trial, which was refused.

*John R. L. Smith* and *J. B. Jackson,* for plaintiff.

*R. D. Smith, R. N. Hardeman,* and *F. H. Johnson,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. There was evidence tending to show that W. E. James and another person constituted a partnership under the firm name of James Manufacturing Company. This partnership desired to make a loan from certain banks, and Mrs. Smith gave the note in suit for the purpose of enabling her son to borrow the money upon the indorsement of E. A. Buck. It was agreed between Buck and James that the former would indorse the note of the partnership upon the

security of his mother's note. Buck did indorse the note, and the loan was made to the James Manufacturing Company. At the time of his indorsement Buck knew that Mrs. Smith was a married woman, and had given this note to her son, as accommodation paper, to aid in procuring his indorsement. It was admitted that the note in suit was acquired by the plaintiff bank after its maturity, being deposited for collection by Buck. The court instructed the jury that if Mrs. Smith signed the note sued on, without consideration, and with the purpose of allowing her son to use it to secure Buck against loss by reason of his indorsement for James of a certain note to the Macon bank, and if Buck was acquainted with all of the facts at the time the note was transferred to him, and if Mrs. Smith was a married woman, she would not be liable thereon. The plaintiff raises the point that the facts hypothesized by the court do not constitute a contract of suretyship.

In this State a wife is a feme sole as to her separate estate, unless controlled by the settlement; and while she may contract, she can not bind her separate estate by any contract of suretyship. Civil Code (1910), § 3007. So that it becomes necessary to determine whether the transaction referred to in the court's instruction is included within this statutory prohibition. The code declares: "The contract of suretyship is that whereby one obligates himself to, pay the debt of another," etc. Civil Code (1910), § 3538. And again: "The obligation of the surety is accessory to that of his principal," etc. § 3539. It is contended that there can not be a liability of suretyship unless the surety and his principal are obligated, not only for the same debt, but also to the same creditor. Many authorities have been called to our attention by the plaintiff, to establish the proposition that the obligation of the surety is for the debt, default, or miscarriage of his principal. Most of these cases concern the statute of frauds. In *Jones* v. *Shorter,* 1 *Ga.* 294 (44 Am. D. 649), it was held that a promise by one person to indemnify another for becoming surety for a third is not within the statute of frauds, and need not be in writing. We recognize that there is a distinction between contracts of suretyship and contracts of indemnity. "In a contract of indemnity the indemnitor, for a consideration, promises to indemnify and save harmless the indemnitee against liability of the indemnitee to a third person, or against loss resulting from such liability. The contract of the indemnitor is an

original undertaking. The indemnitor is liable only to the indemnitee and his assigns; and unless he has stipulated for it, he has no remedy over against the party for whose benefit the contract was made." 1 Brandt on Suretyship and Guaranty, § 5, pp. 19, 20. Such is undoubtedly the rule where the indemnitor is under no legal disability to make the contract against liability on which the indemnity is taken. Should the general rule apply in a case where the indorser's indemnitor is prohibited by law from making the indorsement for which the indemnity is to operate as a substitute? An accommodation indorser is a surety, and the statute forbids a married woman to make a contract of suretyship. A married woman can not make herself liable by becoming an accommodation indorser, and the spirit of the statute outlaws a contract fixing an ultimate liability for the same debt which she can not primarily contract. The whole arrangement contemplated a loan to the son on the faith of the mother's suretyship. If the son had borrowed the money from the bank on a note with his mother, her relation to the bank would have been that of a surety, and her indorsement would have been ineffectual to bind her to pay her son's debt, on account of the prohibition of the statute. Instead of undertaking to contract directly with the son's creditor, she contracted with one to assume a relation of suretyship on the faith of her promise that the ultimate liability of her son's default should be borne by her. The practical effect of the transaction and the common intent of the parties to it was that if the son failed to pay the debt the mother would be answerable for his default. It is true that the mother was not liable to the son's immediate creditor, but her contract was designed to make her liable for the same debt when it was paid by the indorser. One who contracts with the payee of an accommodation note, executed by a married woman, that on the faith of its security he will indorse a note for the payee for discount at a bank, and receives her note with knowledge of all the facts, enters into an arrangement to make the married woman ultimately liable to pay the debt of another; and such a transaction will fall within the law's condemnation of contracts of suretyship by a married woman.

2. The defendant W. E. James prayed that he recover the sum of $2,500 from the proceeds of the note which he claims to have discounted with the plaintiff bank, and for which he never received credit. He was allowed this sum as a credit on the note sued on, by

the verdict of the jury. The court allowed this defendant to testify, with reference to the note which it was contended that J. L. Brooks had discounted for James, and which James had paid, and for which he contended that he had received no credit, as follows: Q. "Did Brooks ever admit to you that he didn't give you credit for this money; did he ever make any admission about this twenty-five hundred dollars note?" A. "He said he would make it good to me when he got out of his trouble in Albany." It appeared that at one time Brooks was president of the plaintiff bank, but his connection with the bank had been severed when this statement was made. The burden was on the defendant to make it appear that Brooks was the agent of the bank at the time he was alleged to have made the admission to which objection was taken. He failed to carry this burden, and the testimony was inadmissible. *Sweet Water Manufacturing Co.* v. *Glover,* 29 *Ga.* 399. But inasmuch as this evidence related solely to the defense of the defendant W. E. James, and had no connection with the defense of Mrs. Smith, we will order a new trial only as to the issue made by the plea of W. E. James, and not disturb so much of the verdict as exonerated Mrs. Smith from liability.

3. The motion for new trial contains other assignments of error. Either they are so clearly without merit, or so involved in the proposition discussed in the first division of this opinion, that it will not be necessary to separately notice them. The verdict in favor of Mrs. Smith was authorized, if not demanded, by the evidence, and a new trial is granted as to the defendant W. E. James.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Fish, C. J., absent.*