WHITNEY & CHADBOURNE, Appellees, v. WILLIAM HOLLOWAY, Appellant.

**PHYSICIANS AND SURGEONS:**  Action for Compensation—Liability of ''Good Samaritan.''  A person who consents or even directs, in an emergency, that a certain physician be called to treat an injured person, does not thereby become impliedly liable for the medical services rendered to such injured party, when the latter is a legal stranger to the person sought to be held liable.

*Appeal from Benton District Court.*—JAMES W. WILLETT, Judge.

DECEMBER 15, 1922.

ACTION to recover for services rendered by a physician, the claim being that the services were rendered for a third party at the request of defendant.  Verdict for plaintiffs, and defendant appeals.—*Reversed.*

*Dutcher & Hambrecht* and *Walter M. Davis,* for appellant

*Tobin, Tobin & Tobin,* for appellees.

FAVILLE, J.—W. R. Whiteis and Henry Albert, who were named as defendants in this action, are the owners of a number

of farms in Benton County, Iowa. The appellant, Holloway, was in their employ, having charge and management of said farms. One Scott was in the employ of Whiteis and Albert, acting under orders from Holloway. On December 23, 1918, Holloway was engaged in hauling logs to a portable sawmill on one of said farms. Scott was assisting in this work with Holloway, and while so engaged, received a fracture of the leg. Immediately after the accident, he was taken to the office of one Dr. Dingman, at Urbana, by some of his coemployees. Dr. Dingman examined the injury, and sent for the appellant, Holloway, and the doctor testified that, after the appellant arrived, he had a conversation with him, as follows:

"I said, 'Well, I will have to have—engage some other physician,' and he said, 'All right,' and I said, 'Who shall I engage?' 'Well,' he said, 'whoever you think best.' I said, 'All right, I will get Dr. Whitney by telephone,' and he said, 'All right, get him;' and that is all. Up to that time, I didn't perform any surgical or medical services for the man whose leg was fractured. I called Dr. Whitney, and he came over there, and I had a conversation with him about the case, and I told him about the conversation with Holloway."

The injured man, Scott, was a witness for the plaintiff, and, regarding the conversation with the appellant, testified:

"Dr. Dingman told him he would have to have some help, and he wanted to know who he would get, and he said, 'We would get Whitney.' Mr. Holloway said to get Whitney."

The appellee Whitney testified:

"The doctor [Dingman] explained to me that this man Scott had been injured during a logging operation on the Whiteis estate, and that Mr. Holloway, their agent, had instructed me,—had instructed him, rather,—to send for me and have me take charge of the case, which I did."

The foregoing is the substance of the appellees' evidence material to the question presented by this appeal. At the close of all the testimony, the appellees dismissed their petition against the defendants Whiteis and Albert. The court overruled the motion of the appellant, Holloway, for a directed verdict in his behalf.

The principal and primary question in this case is whether

or not, upon the record above disclosed, the appellant could be held liable for the value of the services rendered to Scott by the appellee Whitney. Holloway was under no legal obligation to employ a physician for the injured man, or to become personally liable for the services of a physician rendered to him. He could have bound himself, by an express contract, to pay for such services. There was no sufficient evidence of the making of any such express contract to carry that question to the jury. Giving to the evidence the most favorable construction of which it is capable, there was no proof whatever of any express promise on the part of Holloway to pay for the services of the appellee or to become liable therefor.

The question in the case, then, is whether or not there was sufficient evidence of an implied promise on the part of Holloway, from what he said and did in connection with the matter, to carry the case to the jury, and to sustain a finding of such implied promise on his part.

The law in cases of this kind is well stated in *Meisenbach v. Southern Cooperage Co.*, 45 Mo. App. 232, as follows:

"The general rule, no doubt, is that, where a person requests the performance of a service, and the request is complied with and the service performed, the law raises an implied promise to pay the reasonable value of the services. But this implication does not obtain where one person requests a physician to perform services for a patient, unless the relation of the person making the request to the patient is such as raises a legal obligation on his part to call in a physician and pay for the services."

This is the general and well recognized rule. *Boyd v. Sappington,* 4 Watts (Pa.) 247; *Sweet Water Mfg. Co. v. Glover,* 29 Ga. 399; *Edwards v. Morehous S. & M. Co.,* (Mo. App.) (204 S. W. 545); *Spelman v. Gold Coin M. & M. Co.,* 26 Mont. 76 (66 Pac. 597); *McGuire v. Hughes,* 207 N. Y. 516 (101 N. E. 460); *Williams v. Brickell,* 37 Miss. 682; *Dorion v. Jacobson,* 113 Ill. App. Ct. 563; *Voorhees v. New York C. & H. R. R. Co.,* 129 App. Div. 780 (114 N. Y. Supp. 242); *Jesserich v. Walruff,* 51 Mo. App. 270.

In *Crane v. Baudouine,* 55 N. Y. 256, there is an exhaustive review by Judge Folger of the law in cases of this kind.

It was there held that a father was not liable for medical services rendered to his adult, married daughter, who was at the father's home, where the services were rendered, with the knowledge of the father. In said case, the attending physician told the defendant that he, the physician, wanted to call another doctor in consultation, and the defendant assented to this, and expressed a wish to be present. The court said:

"The assent of the defendant to the calling in of Dr. Clark, and his expression of desire to be present when he came,—until he is shown to have employed the plaintiff,—is a basis too weak for an implication of law that he promised to pay his consultation fees."

The general rule above announced has been recognized by us in the case of *Holmes v. McKim*, 109 Iowa 245, wherein we said:

"Where one merely calls a physician to attend upon another, the law raises no implied promise to pay, on the part of the person making such request, unless the latter's relation to the patient is of such a character as imposes upon him the duty to supply a physician; and the relation of employer and employee is not sufficient to do this."

This is a salutary and beneficent rule. Not everyone who summons a physician to attend the sick or injured should be held personally liable by an implied contract to pay for the services rendered. It is readily within the power of the physician to secure an express contract in such a case. Otherwise, he must look to the patient for his compensation.

In the instant case, the appellant was under no legal obligation whatever to pay for the services that were rendered to Scott. He did not agree to pay for the same. The fact that he was the superintendent of the work in which the employee, Scott, was engaged, created no legal obligation on his part to pay for the services that were rendered to Scott by the physician. He was only liable in the event of an express contract. There was no such contract proven. The trial court should have sustained the appellant's motion for a directed verdict at the close of the evidence.

It is unnecessary for us to pass upon the questions raised

by the appellant regarding the admissibility of evidence and the giving of instructions.

For the error pointed out, the judgment of the district court must be, and the same is,—*Reversed.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.