## N. Y. COMMON PLEAS.

EDWARD BRADLEY, plaintiff and respondent, agt. M. H. DODGE, defendant and appellant.

Where a person calls at the office of a *physician*, and in the absence of the latter leaves his business card, written on it " call on Mrs. D— at No. 769 Broadway," and leaves the card with a clerk in the office with a request to hand it to the physician and to tell him to " come as soon as possible," becomes liable to pay the physician's bill in attending upon Mrs. D. in pursuance of such message.

*General Term, March,* 1873.
*Before* DALY, *Ch. J.,* LOEW *and* ROBINSON, *JJ.*
APPEAL from a judgment of the sixth district court.
The facts sufficiently appear in the opinion of the court.

THOMPSON & TOWN, *for defendant and appellant.*
R. C. ANDERSON, *for plaintiff and respondent.*

*By the court,* LOEW, *J.*—This action was brought by the plaintiff, a physician, to recover compensation for professional services.

The defendant called at the plaintiff's office in the Hoffman House, and, on being informed that the latter was out, he wrote on a card, having his own name and address printed thereon, the words " call on Mrs. Day, at No. 769 Broadway," and handed the same to the hotel clerk, with the request to give it to the plaintiff, and tell him to come as soon as possible.

The plaintiff accordingly called upon Mrs. Day profession-

ally several times, and performed services which, on the trial, were proved to be of the value of ninety-eight dollars.

In the court below, the defendant claimed that he merely acted in the matter, at the request of Mrs. Day, as her agent; but the jury, nevertheless, found a verdict in favor of the plaintiff for the amount claimed, and the defendant brought this appeal, and now contends that, under the general term decision of this court, in the case of *Buck* agt. *Amidon* (41 *How.*, 370), the judgment should be reversed.

But in that case the defendant exhibited to and left with the plaintiff the telegram he had received, which, as well as the other facts and circumstances, clearly showed that he only acted as the agent of another party.

In the case at bar, on the other hand; there was nothing on the card to indicate to the plaintiff, before he rendered the services, that the defendant had called at his office at Mrs. Day's request, and that he was, therefore, only acting as her messenger.

The defendant might very readily have screened himself from all liability, by simply writing the memorandum on a blank card, or by adding to that which he wrote on his own card something that would have apprised the plaintiff of the fact that he acted in the transaction for Mrs. Day, as her agent.

Having neglected to do this, the plaintiff was, under the circumstances, justified in believing that he was employed and would be paid by the defendant; and that Mrs. Day's name was put on the card only for the purpose of indicating the person whom the defendant wished him to attend on his account.

If, however, there can be any doubt on this point, the same is disposed of by the verdict of the jury.

In this regard the remarks of chief justice DALY, in *Buck* agt. *Amidon* (*supra*), are pertinent. He says: " Where, upon an uncontroverted state of facts, the point involved remains doubtful, or, upon undisputed facts, inferences may

Bradley agt. Dodge.

be drawn either way, the question is one properly for the jury, and their finding should be conclusive. In all such cases the unanimous concurrence of twelve minds in the jury box is as satisfactory a mode of reaching a right conclusion as to attempt to work it out by legal deductions or logical reasoning."

In respect to the point raised, that the account was charged in the plaintiff's book directly to Mrs. Day, with the words " M. H. Dodge, reference or responsible," added after her name, which, it is urged, shows that he regarded Mrs. Day and not the defendant as the principal, and rendered the services upon her credit, it is sufficient to say that nothing of the kind appears in the return.

If any evidence given on the trial disclosed such to be the case, it should have been returned to us by the justice; and if he failed to do so, the appellant could have procured an order for an amended return.

But it is plain that we cannot, on appeal, assume a state of facts to exist, regarding which there is no allusion in the return.

As to the plaintiff presenting Mrs. Day with a · bill for these same services, the evidence discloses that he did so at her request.

And, besides, it does not appear in whose name the bill was made out.

For aught that we know to the contrary, the defendant may have been named therein as the debtor.

The judgment should be affirmed.

DALY, *Ch. J.*, and ROBINSON, *J.*, concurred.

NOTE.—Let us see how this thing works: We will take as an illustration an almost every-day occurrence arising in the country. A. B. is taken suddenly and seriously ill in the night-time, and sends to his neighbor C. D., living in the next house to his, to have him go after the doctor as soon as he can, for he is in great pain and distress. C. D. jumps out of bed without hesitation and hastily dresses himself, and goes out to his barn and takes a horse from the stable, and not waiting to put on a saddle

Bradley agt. Dodge.

or bridle, jumps on to the horse with the halter only, puts him at full speed for the doctor's office, some two or three miles distant. On arriving there he finds the doctor absent from home, but his clerk is there, and C. D. at once says, tell the doctor to call on A. B., who has been taken suddenly sick; tell him to come as soon as possible. In accordance with this message, the doctor calls upon A. B. and prescribes for and attends him professionally for several days. After a reasonable time the doctor sends in his bill to A. B., and it not being paid as soon as the doctor desires, he calls on C. D. and requests him to pay the bill. C. D., with perfect astonishment, asks why he is to pay it. The doctor informs him that he made himself liable to pay the bill, because when he delivered the message he did not tell the clerk that he came for the doctor by the request of A. B., nor that he acted as agent of A. B. in delivering his message. Well, says C. D., the fact was I did go at the request of A. B., and merely acted as his agent in delivering the message, and I will swear to these facts if necessary. The doctor insists that it will do him no good if he should give such testimony, for the law is settled on that point, as just such a case has recently been decided in New York under just such a state of facts, where the jury in the justices' court found a verdict for the doctor for the amount of his bill, and on appeal by the defendant to the general term of the New York common pleas, that court unanimously sustained the verdict of the jury and affirmed the judgment of the court below. Well, says C. D., if that is the law, I think I will wait awhile before I go after a doctor again as an act of neighborly kindness.

It appears to us that this case ought never to have got as far as the jury box. If, as it seems to be inferred from the case, it not being stated in terms, that the defendant was sworn as a witness on his own behalf, that he acted only as the messenger or agent of Mrs. D. in delivering the message to the doctor, and his testimony was unimpeached, it was a clear case for a nonsuit, there being nothing for the jury to decide, at least only formally under the direction of the court. And if the defendant was not sworn and testified, and the case was left standing upon the memorandum, there was only an inference of law from the facts, which were very simple and undisputed, which the court should have decided, and that inference must have been whether or not this was an original undertaking on the part of the defendant to pay the debt of another; for there was no pecuniary consideration nor beneficial interest resulting to the defendant which could establish his liability. It used to be considered that it required a pretty good lawyer and a pretty good judge to determine in given cases what constituted an original undertaking, but if it has been transferred to the jury box of twelve good men to determine this question, and their determination is to be considered unreversible on appeal, it may be quite a relief to the courts, although the community generally may not feel that confidence in such a settlement of the law as they would on the decision of the courts in such cases.—REP.