Dorion v. Jacobson.

## Theophile Dorion v. Lars P. Jacobson.

### Gen. No. 4,241.

1. PHYSICIAN—*when allegation and proof of licensing of, is not essential to recovery.* Where a physician suing for fees has testified without objection that he was a physician and surgeon of twenty years' practice and was a graduate of a medical institution, etc., the defendant cannot urge upon appeal that the judgment should be reversed be-

cause of failure to allege and prove that he was a licensed physician and surgeon with his license duly recorded as required by law.

2. MEDICAL SERVICES—*what does not establish liability for.* One under no obligation to provide or pay for medical attendance cannot be held responsible therefor in the absence of a promise to pay, relied upon by the physician.

Action of assumpsit. Appeal from the Circuit Court of Kankakee County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the April term, 1903. Reversed and remanded. Opinion filed April 14, 1904.

A. L. GRANGER and W. R. HUNTER, for appellant.

DANIEL H. PADDOCK, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Appellee, a physician and surgeon, sued appellant in the Circuit Court of Kankakee county, for professional services rendered in the performance of an operation for the removal of a tumor from the abdomen of the wife of appellant's son. Appellant pleaded the general issue, Statute of Frauds, and the services for which appellee sought to recover were rendered in Kankakee county after July 1, 1899, and that appellee had not at that time recorded in the office of the clerk of Kankakee county a certificate or license from the State Board of Health authorizing him to practice medicine and surgery. A trial was had by jury, resulting in a verdict and judgment for appellee for $400, from which this appeal is prosecuted.

It is first insisted that this judgment should be reversed because it was not alleged in the declaration nor proven on the trial, that appellee was a licensed physician and surgeon, nor that he had recorded his certificate from the State Board of Health in Kankakee county. Appellee testified without objection, that he was a physician and surgeon of twenty years' practice; that he was a graduate of King's Medical University, Copenhagen, Denmark, and had practiced his profession in America sixteen years, and since some time in 1898, had been located in Clifton, Iroquois county,

Dorion v. Jacobson.

Illinois.  In our opinion, appellee, by his failure to object to this testimony at the time, waived his right to raise the question here.

It appears from the evidence that appellant's daughter-in-law was afflicted with a tumor, and before appellee saw her, those who had been treating her pronounced her incurable, and it was thought she could survive but a short time. Mrs. Dorion was living with her husband, and appellant was taking his meals at their house.  There was nothing in the relationship of appellant to Mrs. Dorion from which the law would impose upon him a liability to pay for her medical treatment in the absence of a contract to do so. Appellee predicates his right to recover on an express contract with appellant, which appellant denies.

Appellee was not Mrs. Dorion's physician, and had not seen her till the day she was taken under his direction to a hospital to have the operation performed.  He was not then called to see her by appellant or his son, but happening in a store where Howard Fenouille, a brother of Mrs. Dorion, was employed, the brother asked appellee if he would go and see his sister, Mrs. Dorion.  This he agreed to do, and went at once to the house of Mrs. Dorion, and after examining her, decided an operation was necessary.  Appellee in company with Howard Fenouille, then went to the office of Dr. Smith, who had been Mrs. Dorion's last attending physician, to consult with him about the case, and about getting his assistance in the performance of the operation. It was between ten and eleven o'clock in the morning when appellee first went to Mrs. Dorion's house.  Between twelve and one o'clock he returned in company with Dr. Smith and Dr. Lee, and caused her to be removed to a hospital, where it was proposed to perform the operation next morning.

On the trial appellee testified that he met appellant the first time he called at Mrs. Dorion's; that after he had examined his patient, appellant asked him what he thought about the case, to which he replied he thought the woman entitled to the only chance there was left for her life, even

if it was attended with some expense; that appellant said it was not the expense he looked upon, if there was a chance, but eminent men had told him there was no chance for her, and appellee replied, "That don't change my mind a particle." Appellant said, "Oh, don't it?" and went to the room where the sick woman was and talked to her. Appellee says he heard their conversation, and that appellant asked her if she had made up her mind to let appellee operate on her; that she replied, "Yes, father, if there is a glimpse of a chance, let me have it. Have you no objection?" To which appellant answered, "No, my dear," and then came back to appellee and said, "Well, go ahead." This appellee claims he understood, and relied on, as an employment by appellant which authorized him to charge appellant with the value of the services rendered. It appears from the evidence that Mrs. Dorion's husband, who, at the time of the trial, was engaged in business in Chicago, was not at home the day his wife was removed to the hospital. Whether he was then engaged in business in Chicago and was there attending to it, is not shown, but at all events, he was not at his house.

Appellant denies employing appellee, or saying anything to him which could, by any means, be construed as an employment by him, or a promise to pay for appellee's services. Howard Fenouille, at whose request appellee went to see Mrs. Dorion, testified that he went to her house with appellee and came away with him, and they together went to Dr. Smith's office. He says appellant was not at Mrs. Dorion's house at that time; that at Dr. Smith's office he asked appellee what the expense of an operation would be, and he said, if successful, about $150, if unsuccessful about $10; that he then went out to see his father and appellant, and asked appellant to go to Dr. Smith's office, but he did not do so. The witness further testified that he caused a conveyance to be sent to take Mrs. Dorion to the hospital, and when he went to the Dorion house the second time, which was between twelve and one o'clock, appellant was there and he introduced him to appellee.

Dorion v. Jacobson.

Appellant testified that the first time he met appellee was when they came with a conveyance to take Mrs. Dorion to the hospital; that it was about 12:30 o'clock and he was eating his dinner; that Howard Fenouille introduced him to appellee; that he continued eating dinner and had no talk whatever with appellee, and specifically denies the conversation detailed by appellee.

Mrs. Kate Beauchamp, who was nursing Mrs. Dorion, testified that when appellee called at the house the first time, he came with Howard Fenouille a little after ten o'clock, and that no one was there but herself, Mrs. Dorion and a servant girl who was in the kitchen; that she did not see appellant there before dinner, and that she was informed before appellee left the house that they were going to operate on Mrs. Dorion. This was all the testimony offered on both sides, on the proposition of an express employment of appellee by appellant, and an agreement to pay for the services.

This case was tried twice in the Circuit Court of Kankakee county. It will be seen from the testimony above set out, that on the second trial appellee testified, that what he claimed constituted an employment and agreement to pay, took place on the occasion of his first visit to the house of Mrs Dorion. He does not claim that any talk or conversation occurred between him and appellant when he made his second visit there, which was for the purpose of removing the patient to the hospital for the purpose of performing an operation. It is evident the operation had been decided on, and that appellee had consented and agreed to perform it, before he returned to the house of the sick woman the second time, because he says the object and purpose of the second visit, was to assist in preparing and removing her to the hospital. If, then, appellant did not by something that occurred between him and appellee, when the latter first visited Mrs. Dorion, obligate himself to pay for appellee's services, he never did become liable, and no recovery could be had in this case. If appellant is liable at all, he became so before appellee determined upon, or

consented to perform the operation, and his undertaking would, therefore, be an original undertaking and promise, and the Statute of Frauds could have no application.

In addition to the testimony of appellant and the two witnesses who testified he was not at the house when appellee called the first time, the official court reporter testified that on the first trial appellee swore it was after he had returned to the house from Dr. Smith's office, that he had the talk with appellant, upon which he bases his right to recover; that it was decided while in Dr. Smith's office to perform the operation, provided Mr. Dorion did not object, and that he went to Dr. Smith's office to engage his assistance, if Mr. Dorion did not object to an operation. This testimony is inconsistent with appellee's testimony at the last trial.    There is also in this record the testimony of one apparently disinterested witness that appellee told him appellant had never promised to pay him for the operation but he thought he ought to pay it because he had paid the hospital bills.

Even if appellee's testimony at the last trial was undisputed, his right to recover would, in our opinion, not be entirely clear.    The relation of appellant to Mrs. Dorion was such that something more than a mere request to appellee to render the services was necessary in order to bind appellant. He was under no legal obligation to provide or pay for medical attendance to Mrs. Dorion, and in her husband's absence his consent to the performance of the services or even a request therefor, unless accompanied by a promise to pay for them, upon the faith of which the services were rendered and but for which they would not have been rendered, would not authorize a recovery.    Smith v. Watson, 14 Vermont, 332;  Boyd v. Sappington, 4 Watts (Penn.), 247; Crane v. Bandouine, 55 N. Y. 256.    No particular form or set of words is required in such cases, but it must appear that a party occupying such relations as appellant occupied toward Mrs. Dorion, requesting or acquiescing in the services of a physician, said or did that which reasonably indicated an intention to pay for them, and that it was so un-

derstood by the physician, and for that reason the services were rendered.    If appellant had said all appellee testified he did, it would as reasonably harmonize with the theory that he intended merely to give his consent to the operation as with the theory that he meant to be understood as agreeing to pay the bill.

It was incumbent upon appellee to prove his case by a preponderance of the evidence.    In view of the fact that appellee's testimony was in conflict with the testimony of appellant and two other witnesses, and the further fact that it was proven he had testified to a different state of facts on the first trial, we cannot say he has made out his case.    While it is true in some cases the testimony of one witness may properly be given more credit than that of three witnesses who testify to the contrary, we are unable to say this case can be properly placed in that class.

In our opinion the verdict and judgment were contrary to the weight of the evidence, and the court erred in not granting a new trial.    For these reasons the judgment is reversed and the cause remanded.

*Reversed and remanded.*