## MacGUIRE v. HUGHES.

(Supreme Court, Appellate Division, First Department. June 5, 1908.)

1. WORK AND LABOR—CONTRACTS—IMPLIED AGREEMENTS—PERSONAL SERVICES.
    A simple request to perform services for another to whom there exists no obligation to furnish the services does not create an implied obligation to pay for such services by the person making the request, and a promise to pay cannot be implied merely from a request that the services he rendered, and these principles extend to all cases where personal services are rendered by one person to another.

2. PHYSICIANS AND SURGEONS—CONTRACT OF EMPLOYMENT.
    Defendant asked plaintiff, her family physician, to call at the home of her married daughter, who was ill, to treat her, but plaintiff refused to call on the daughter without the consent of her husband, whereupon defendant and her son-in-law met plaintiff at his office, and the son-in-law consented that plaintiff treat his wife, nothing being said at the time

as to who was employing plaintiff, or as to whom he should look for payment of his fees. *Held*, in an action against defendant to recover for medical services performed for her daughter, that there was nothing to show that defendant employed plaintiff to treat her daughter, or that she had expressly or impliedly promised to pay for his services.

3. WITNESSES—IMPEACHMENT—BIAS OF WITNESS—EMPLOYMENT BY PARTY.
Plaintiff, a physician, was employed to treat defendant's daughter, and called another physician in consultation. In an action against defendant to recover for his services in treating her daughter, the consulting physician was called as a witness for plaintiff, and testified that plaintiff's services were worth the amount of his bill, and, upon cross-examination, testified that he rendered a bill against defendant for his services which she refused to pay, and he brought suit against her. He was then asked whether he failed to recover, for the purpose of showing the bias of the witness against defendant, which question was objected to and excluded. *Held* that, the witness being an expert, and having already testified to the value of plaintiff's services, it was proper to allow upon cross-examination any question going to show that he was prejudiced against the party against whom he was testifying, and the evidence should have been admitted, especially since the witness was testifying to a matter of opinion, and not to facts.
Houghton and Laughlin, JJ., dissenting.

Appeal from Appellate Term.

Action by Constantine J. MacGuire against Margaret E. Hughes. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles Strauss, for appellant.
John C. McGuire, for respondent.

INGRAHAM, J.  The action was brought to recover for medical services.  The complaint alleges that between the 11th of November, 1903, and the 17th day of January, 1904, the plaintiff, as a physician, rendered certain professional services at the special instance and request of the defendant in and about the treatment of the defendant's daughter, Mrs. J. J. Bradley; that the services were reasonably worth the sum of $3,000; that the defendant has not paid the plaintiff the said sum or any part thereof, and demands judgment therefor.  The answer denied the allegations of the complaint, except that the plaintiff is a physician and surgeon and the defendant has not paid the plaintiff the sum demanded or any part thereof.  Upon the trial the plaintiff testified that in November, 1903, he was called on the telephone by the defendant, who inquired whether the plaintiff had been called to see her daughter, who was very ill; that the plaintiff told her that he had not been; that the defendant then told the plaintiff that Mrs. Bradley, her daughter Maude, was seriously sick; that she lived in 102d street, and asked the plaintiff to go over to see her; that the plaintiff told her that he could not go over to see her daughter without the consent of her daughter's husband; that the defendant then said that she believed her son-in-law objected to having the plaintiff called in; that, when the plaintiff returned to his office on the 12th of November, he found the defendant and her son-in-law (husband of the defendant's daughter who was ill) waiting for him;

that the defendant introduced her son-in-law to the plaintiff, and asked the plaintiff in the presence of her son-in-law to go and see her daughter, when the plaintiff said that he was satisfied to go. Upon cross-examination as to the interview with Mr. Bradley, he testified that he did not remember anything that Mr. Bradley said; that his attitude was one merely of acquiescence in the plaintiff's attendance; that he interpreted Mr. Bradley's presence as a consent of Mr. Bradley that the plaintiff should attend Mr. Bradley's wife, and he attached no further importance to it than that Mrs. Hughes' action had been approved of; that Mrs. Hughes said nothing in the presence of Mr. Bradley, except that she asked the plaintiff if he would go and see her daughter, who was dangerously ill; that Bradley then left, saying that he would go ahead in the street cars; that, after Bradley left, the defendant repeated to the plaintiff what she said over the telephone with regard to her anxiety to have the plaintiff called in earlier in the case, and that the reason why he had not been called in was the objection on the part of her son-in-law, whereupon the plaintiff left his house in a carriage that the defendant had brought there, and went with the defendant to Mrs. Bradley's residence; that, when he got there, he found that Mr. Bradley had already returned, and the plaintiff made an examination of the patient; that after he had made the examination he said he would like to withdraw from the case, and have nothing to do with it; that the condition of her daughter was particularly grave, dangerous, and bad; that he did not wish to have anything to do with such a case; that, in response to that, the defendant said, "Doctor, you have been my friend, you have attended my family, you have attended my husband and our children, and I beg of you, for God's sake, don't desert Maude," and the plaintiff then consented to remain in the case; that the plaintiff continued in charge of the case, and called in a consulting physician; that the patient was subsequently removed to a hospital, and died in the following month. The plaintiff was aware that his patient was married to Bradley; that she was living with her husband, apart from the defendant; and that it was at Mr. Bradley's house that he was asked to attend Mr. Bradley's wife. At the close of the plaintiff's case, the defendant moved to dismiss the complaint upon the ground that the plaintiff had failed to prove a cause of action, which motion was denied.

The defendant testified that Mrs. Bradley was her daughter, and that her daughter's husband was John J. Bradley; that she had a consultation with Bradley on the subject of employing the plaintiff, and as a result of that conversation Bradley went with the defendant to the plaintiff's house; that she introduced Bradley to the plaintiff, who said to the plaintiff that he would like to have him come up and see his wife, and gave the plaintiff his address; that the plaintiff wrote it down, and said he would go right up with the defendant in the cab that she had there; that the only conversation as to the plaintiff's attendance upon Mrs. Bradley was with Mr. Bradley; that the defendant had several interviews with the plaintiff about her daughter's illness; that the plaintiff had been the defendant's family physician for a long time, and she recommended him to Mr. Bradley for that

reason; that there was no question of employment or payment, or as to whom would be responsible for the services rendered ever spoken of. Bradley, defendant's son-in-law, testified that he had engaged a Dr. Pidgeon to look after his wife; that the defendant seemed to be very much worried about the way things were, and she spoke about the plaintiff and asked him if he would have any objection to the plaintiff's coming there; that Bradley said he had not, and that he would go down and get the plaintiff, when the defendant said that she would meet Bradley at the plaintiff's office; that Bradley was introduced to the plaintiff, and asked the plaintiff to come to Bradley's house to see his wife, and the plaintiff came there; that he was able financially at the time of the illness of his wife and her subsequent death to pay any fair and reasonable charge which might be incurred in connection with her ailment, and that he was able at the time of the trial to pay such charges; that he never received any bill from the plaintiff, and never refused to pay for the services rendered. Both sides having rested, the defendant renewed the motion to dismiss the complaint, which was denied. The court submitted the question to the jury, who found a verdict for the plaintiff, and, from which the appellant, appealed to the Appellate Term, where it was affirmed, and then appealed to this court.

The evidence from which plaintiff seeks to infer a promise of the defendant to pay for the services rendered by plaintiff is that defendant requested the plaintiff to attend her daughter, who was seriously ill, and she exhibited much anxiety about the condition of her daughter. The defendant had great confidence in the plaintiff, who had been her family physician for many years, and was anxious that he should see her daughter; that the doctor refused the request of the defendant, insisting upon the consent of the patient's husband, and the defendant went to the office of the physician, and, as a result of what there happened, the plaintiff consented to and did take charge of the case and rendered services for which a recovery is sought. The plaintiff refused to act upon any employment by the defendant, and would only undertake the case with what he called the consent of the person who was legally responsible for the services that he was asked to render, and who was the one to whom he would naturally look for payment had he united in the request. All that the defendant did was to urge plaintiff to act as her daughter's physician. There was nothing that was said by the defendant from which could be inferred a promise to be personally responsible for the services rendered, nor were services rendered to her or to one to whom she was under an obligation to provide a physician.

The question, therefore, presented, is whether a person is responsible for merely requesting that a physician attend a patient for whom the person making the request is under no obligation to supply medical attendance. I think that question has been conclusively determined in the negative in this state and in England. The leading case in this state is Crane v. Baudouine, 55 N. Y. 256. In that case the situation was much like the present. The patient was a daughter of the defendant who had passed her majority, was married, and lived with her husband and her children separate from her father in a house of their

own, although in that case the fact existed which does not exist here, that the patient had been brought from her own house to that of the defendant for the special purpose of having the patient under the immediate care and attention of her mother during her sickness; but the court held that this did not impose upon the defendant any greater obligation than existed before, nor did it give ground for the law to imply a special obligation. In discussing the question generally, the court said:

"It is true that particular acts will sometimes give rise to particular obligations, duties, and liabilities. But the party whose acts are thus to affect him must be in such predicament as that those acts have of legal necessity a significance attached to them at the time, which he may not afterward repel. * * * It is true that a person may not avail himself of the benefit of services done for him without coming into an obligation to reward them with a reasonable recompense. But he cannot be said in the meaning of the law to avail himself of services as so done when they are not for his individual benefit, nor for that of any one for whom he is bound to furnish them. The acquiescence of one in the rendering of service or benefit to another, not entitled to call upon him therefor, is not equivalent to an acknowledgment that it is rendered at his request. So far as legal responsibility was concerned, the defendant, though the father of the patient, was a stranger to her and to her necessities. He could neither require of her, nor be required upon by her."

The court then cited with approval the case of Boyd v. Sappington, 4 Watts (Pa.) 247, where it was held that a special request by a father to his physician to attend upon his son, then of full age, but lying sick at the father's house, raised no implied promise on the part of the father to pay for the services rendered, and the case of Veitch v. Russell, 3 Ad. & Ell. (N. S.) 927, where it is said:

"A physician attends in every case on request. That fact alone is not sufficient for the inference of a special contract."

The court then proceeds:

"It was the duty of the plaintiff to know or to learn the true legal status of the patient, and what were her true legal relations to the defendant; and he cannot rely upon any seeming legal and necessary dependence of her upon him."

This case seems to have been followed, without question, both in this state and other states. See Meisenbach v. Southern Cooperage Co., 45 Mo. App. 232; Dorion v. Jacobson, 113 Ill. App. 563. See, also, Smith v. Watson, 14 Vt. 332. The principle established in these cases, which is a simple restatement of the common law, is that a simple request to perform services for another to whom there exists no obligation of any kind to furnish the services does not create an implied obligation to pay for such services by the person making the request, and that a promise to pay cannot be implied from a simple request that the services be rendered; and I apprehend that this principle is not peculiar to the relation of a physician and his patients, but extends to all cases where services, personal in their character, are rendered by one person to another. There was in this case no express promise by the defendant to pay to the plaintiff for his services to the defendant's daughter. There was great anxiety about the daughter and her condition shown by the defendant, and an ardent

desire that the daughter should receive the benefit of the plaintiff's professional skill and experience. The plaintiff knew that the patient that he was asked to attend was married and living with her husband, and he refused to attend the patient without her husband's consent. The husband's consent was obtained, and there then arose the obligation on the part of the husband to pay for the plaintiff's services to his wife. When that consent was obtained, the plaintiff at once consented to see the patient. He exacted no promise from the defendant as to compensation; 'nor was there anything said from which there could be implied an understanding that the services were to be rendered for the defendant, and not for the patient and her husband. He required the consent of the patient's husband to accept the employment, and continued in charge of the case to the end under such consent. There was therefore nothing, as I view it, in this case which raised a presumption that the plaintiff's services were rendered to the defendant, or that the defendant promised to pay for them; and I think it was error to deny the motion to dismiss the complaint.

There was also an error committed on the trial to which attention should be called. The plaintiff had called an eminent physician in consultation, and this physician was called as a witness to testify as to the value of the plaintiff's services. He testified that the services were worth $2,000, the amount of the patient's bill. Upon cross-examination he testified that he rendered a bill against the defendant for his services, which she refused to pay, and he brought suit against her. He was then asked whether he failed to recover, which was objected to by the plaintiff. The court characterized the question as absolutely improper, and stated to counsel that he should know better. Counsel stated that it was asked upon cross-examination as to the bias of the witness against the plaintiff, and the court allowed the defendant an exception. I think this question was proper, and that the criticism of the defendant's counsel by the court was unjustified. The witness was called as an expert. He had testified as to the value of the plaintiff's services, fixing the value at the same amount fixed by the plaintiff and which was the amount sued for, and it was proper to allow upon cross-examination any question to show that the witness had a prejudice or bias against the party against whom he was testifying. This was especially important in relation to testimony of this character, which is not as to the existence of a fact about which the witness could be presumed to testify correctly, but about a question of opinion in relation to the value of services, which is very liable to be largely influenced by feelings of antagonism or friendship.

The judgment appealed from must be reversed, and a new trial ordered, with costs to the defendant to abide the event.

McLAUGHLIN and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). I cannot assent to the proposition that the plaintiff did not make a prima facie case of hiring by the defendant. I assume it must be conceded to be the law that a physician is entitled to recover compensation for his services, and that his

hiring need not be express, but may be inferred from an implied contract; and, also, that a parent of a married daughter may, if he choose, contract with a third party to perform services or furnish necessaries for her.

The only principle to observe in determining whether the parent is liable to pay in case of necessaries like medical attendance is the presumption that the contract was made by the parent in behalf of the person primarily liable, which in the present case was the husband of the daughter. The moment that presumption is overcome the contract of hiring must be given effect and the parent must pay. The testimony of the plaintiff is that the defendant telephoned to him, asking if he had been called to see her married daughter, who was very ill, and, upon his replying that he had not, asked if he would go and see her, and the plaintiff replied that he could not go without the consent of the daughter's husband. Testifying, further, as to conversations, he said:

"Mrs. Hughes said further to me that she believed her son-in-law objected to having me called in; that the objection made by her son-in-law to calling in myself into the case had alarmed her."

This conversation was about the 1st of November, and matters seem to have rested as they were for 10 or 12 days, when, on the evening of the 12th of November, the plaintiff on returning to his office found the defendant and her son-in-law waiting for him. The son-in-law was introduced, and the defendant, in his presence, asked the plaintiff if he "would go up and see her daughter, that she was dangerously ill." The husband left, the defendant remaining in the office to take the plaintiff to her daughter in the carriage in which she had come, which she did. While the plaintiff was preparing to go with her, "she repeated what she had said on the telephone with regard to her anxiety to have me called in earlier in the case, and she repeated then that the reason why I had not been called in was the objection on the part of her son-in-law." After the plaintiff made an examination of the condition of the daughter, he told the defendant that he would like to withdraw from the case because of the condition in which he found the patient. In response the defendant said:

"Doctor, you have been my friend, you have attended my family, you have attended my husband and our children, and I beg you, for God's sake, don't desert Maude."

Thereupon the plaintiff consented to continue his treatment of the daughter. The next day, the condition of the patient becoming worse, the plaintiff advised with the defendant, and told her that he thought it advisable to call in a consulting physician; that she told him to spare no pains, and to do everything possible for her daughter. On cross-examination the plaintiff is more specific. He says that the conversation with the husband consisted merely of an introduction, and that in his presence the defendant said, "This is Mr. Bradley, my son-in-law, and I want you to go up and see my daughter," and that Bradley said nothing and immediately departed.

It is perfectly manifest from what took place that the defendant

brought her son-in-law to the plaintiff's office, not for the purpose of having him solicit the plaintiff to attend his wife, the defendant's daughter, but simply for the purpose of showing the plaintiff that the son-in-law had withdrawn his objections to the defendant having the plaintiff treat her. The plaintiff testifies that he so understood the interview, and that nothing was said which could lead him to believe that the husband had come there to engage his services, or to hire him, but that as he assumed his only purpose was to evidence his consent that his mother-in-law might employ him. The defendant denied that she asked the plaintiff to attend her daughter, and said that at the interview with plaintiff at his office the son-in-law, and not herself, requested that he should do so. On cross-examination she admits that she called him on the telephone, but says she simply asked him if he had been called, and said nothing further, and that she did not regard her daughter as seriously ill, and never asked the plaintiff what her malady was, or expressed any wish that he continue to treat her. The jury very properly disbelieved her story, and credited that of the plaintiff.

The case of Crane v. Baudouine, 55 N. Y. 256, appears to be curiously misunderstood. All that case holds, or that any case in our jurisdiction dealing with the right of a physician to recover for services holds, is that expressions of natural anxiety and solicitude concerning treatment of a sick relative or friend, or the summoning of a physician by a stranger as an act of humanity, shall not be tortured into a contract of employment. Veitch v. Russell, 3 Ad. & Ell. (N. S.) 928, cannot be regarded as an authority, because that decision was put expressly upon the ground that the compensation of a physician was merely honorary, and that he had no legal right to recover in the absence of an express contract. As an introduction to his opinion, Lord Denman says:

"It must be assumed as clear that physicians and counsel usually perform their duties without legal title to remuneration."

Boyd v. Sappington, 4 Watts (Pa.) 247, was reversed on the ground that the father was not permitted to show that the son for whom the physician's services were rendered had property of his own and was doing business for himself, and this upon the ground that it went to the probability of the doctor having rendered services on account of the son alone. The meager authorities on the subject are reviewed in Foster v. Meeks, 18 Misc. Rep. 461, 41 N. Y. Supp. 950, and it is there held that one who requests a physician to attend another personally, without disclosing that he is acting only as agent, becomes liable to pay the physician's bill. To the same effect is Bradley. v. Dodge, 45 How. Prac. (N. Y.) 57. The evidence in the present case cannot be tortured into proving that the defendant hired the plaintiff on behalf of her daughter's husband. He had his own physician in attendance, and objected to calling the plaintiff, and finally yielded to the importunities of the defendant and permitted her to call the doctor she desired. Folger, J., in Crane v. Boudouine, supra, which is relied upon for a reversal of this judgment, expressly states that a physician may recover upon an implied contract, and that an express con-

tract is not a necessity. In that case the referee had found against the physician, and the General Term had reversed the judgment, and the Court of Appeals simply held that the referee was best qualified to pass upon the question of fact as to whether there was a hiring or not in view of the defendant's denial of employment, and that the evidence was not so preponderating in plaintiff's favor as to authorize the over-turning of the decision. To my mind such is the situation in the present case, and, the jury having found in favor of plaintiff, its verdict should not be disturbed.

There are no errors of law requiring a reversal. Plaintiff's witness Dr. Cleveland had been fully interrogated as to her having presented a bill to defendant and her refusal to pay and his having brought suit against her. His bias was fully shown, and it was wholly immaterial whether he lost or won in his litigation. Indeed, it would have been error to prove the judgment obtained in the other action between different parties and founded necessarily on different evidence. I think the judgment should be affirmed.

LAUGHLIN, J., concurs.

