VAN GAASBEEK v. UNITED STATES LACE CURTAIN MILLS.

(Supreme Court, Appellate Division, Third Department.   May 5, 1909.)

PHYSICIANS AND SURGEONS (§ 24*)—CONTRACT OF EMPLOYMENT—EVIDENCE.
    Evidence in an action by a physician to recover of a master for his services in treating an injured employé *held* not to show a contract to pay for services after the employé was taken home from a sanitarium.
    [Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 24.*]

Appeal from Trial Term, Ulster County.

Action by George H. Van Gaasbeek against the United States Lace Curtain Mills. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

A. T. Clearwater, for appellant.
James H. McKittrick, for respondent.

SEWELL, J.   This action was brought to recover compensation for services rendered by the plaintiff as a physician and surgeon in attending Dennis Murphy, a former employé of the defendant. There was no dispute about the rendition of the services or their value. The only question litigated was whether the defendant was liable to pay for the services rendered after Murphy was removed from the sanitarium to his home. It appeared that Murphy was injured while in the employ of the defendant, and that one of its officers or servants telephoned for physicians; that the plaintiff went to the defendant's factory and took

the patient to the Benedictine Sanitarium, one of the charitable institutions of the city of Kingston, where he remained 11 days; that he was then taken home, and was there treated by the plaintiff for 14 weeks.

The plaintiff testified that he appeared in answer to the call; that Mr. Stiner, the defendant's vice president—

"had nothing to say as to the treatment; only simply advised taking the young man to the sanitarium, where, perhaps, he could be cared for much more closely than at home. * * * I can't repeat the language that was used, but the advice was to take the young man, Murphy, to the sanitarium, and he to be looked after and cared for."

Murphy testified:

"The only conversation that I heard take place between Dr. Van Gaasbeek and Mr. Stiner was to have me taken to the hospital, the Benedictine Sanitarium, and have all the treatment and be taken care of. It was Mr. Stiner who directed the doctor to take me to the hospital."

On cross-examination he stated:

"Mr. Stiner said to have me taken to the Benedictine Sanitarium and I would have all care taken of me there."

The plaintiff then called Murphy's mother as a witness, who testified that Mr. Stiner came to the house the morning of the accident—

"and he says, 'I have sent for the doctor, and had him taken to the sanitarium; that I think he will be properly cared for there.' That is what he said."

The evidence on the part of the defendant was that the plaintiff suggested taking Murphy to the hospital or sanitarium, and Mr. Stiner merely advised him to go to the hospital. Beyond this testimony there was no evidence tending to show an agreement, expressed or implied, on the part of the defendant. It was conceded that the value of the services rendered by the plaintiff at the factory and in taking the patient to the hospital did not exceed $10, and a tender of that sum was alleged in the answer. At the close of the evidence the defendant's counsel asked the court to direct a verdict for $10. The court refused, and the jury rendered a verdict for $450.

We think the verdict is so clearly against the evidence as to justify the conclusion that the jury mistook the import of the evidence or were influenced by passion or prejudice in rendering it. The fact that Stiner advised taking Murphy to the sanitarium, or that he directed the plaintiff to take him there for treatment, did not raise an implied promise to pay the plaintiff for his services.

"It is true," said Judge Folger, in Crane v. Baudouine, 55 N. Y. 260, "that a person may not avail himself of the benefit of services done for him without coming into an obligation to reward them with a reasonable recompense. But he cannot be said, in the meaning of the law, to avail himself of services as so done when they are not for his individual benefit, nor for that of any one for whom he is bound to furnish them. * * * It has been held that a special request by a father to a physician to attend upon his son, then of full age, but lying sick at the father's house, raised no implied promise on the part of the father to pay for the services rendered. Boyd v. Sappington, 4 Watts (Pa.) 247. And so in Veitch v. Russell, 3 Ad. & Ell. (N. S.) 927, it is said: 'A physician attends in every case on request. That fact alone is not sufficient for the inference of a special contract.'"

The principle upon which a person may recover of the parent for necessaries furnished his infant child is that the person who has supplied such necessaries is deemed to have conferred a benefit upon the delinquent parent, for which the law raises an implied promise on his part to pay. In the case at bar it is not pretended that the services of the plaintiff were for the benefit of the defendant, or for one for whom it was bound to provide. It follows that the liability for the services was presumptively and primarily upon the patient or his parents, and that it could not attach to the defendant, in the absence of an express agreement on its part to pay therefor.

The result is the same if we assume that the advice or direction to take the patient to the sanitarium was an employment of the plaintiff for that particular service, and was sufficient to sustain an implication of a promise to pay. The language used fairly implies that the plaintiff was merely to take the patient to the sanitarium. There is no suggestion, much less proof, of anything said or done which would give rise to an obligation on the part of the defendant to pay for any other service.

We are therefore of the opinion that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.