SHIRLEY, Appellant, v. MADSEN, Respondent.

(216 N. W. 601.)

(File No. 5720. Opinion filed December 13, 1927.)

*Wilmarth, McCoy & McCoy,* of Huron, for Appellant.
*Kelley & Luby,* of Huron, for Respondent.

POLLEY, J. The plaintiff in this action is a physician and surgeon practicing his profession at Huron. On the 29th day of July, 1920, defendant's daughter, Florence Madsen, an adult, who was engaged in teaching school and not living with defendant, consulted plaintiff. After making an examination, plaintiff advised a surgical operation. Immediately thereafter the patient entered

a hospital, conducted by plaintiff, where he performed the operation. Plaintiff's services not being paid for, he brought this action for the purpose of compelling defendant to pay the same. Defendant denied liability. At the close of plaintiff's testimony, the court directed a verdict for defendant. Judgment was entered dismissing the action, and plaintiff appeals.

Plaintiff is not seeking to recover from defendant on the ground that defendant is a surety or guarantor for his daughter, nor on the ground that defendant is liable for services performed for the daughter because she is his daughter, but upon the ground that defendant became liable by reason of contract prior to the performance of the service. No question is raised as to the character or value of the service.

Upon the question of the contractual relation, plaintiff was the only witness, and, the verdict having been directed against him, his testimony will be taken as true. Upon this subject plaintiff testified as follows:

"Am acquainted with defendant and his daughter Florence. She first called at my office July 29, 1920. An examination revealed chronically inflamed appendix and some suggestive trouble on right side in pelvis, which I told her, and I also suggested to her that she should be operated on, and that before we did operate on her we would want to talk with her father. I told her she needed an operation. She said she had no money to pay her bills, that she had been teaching school, but that she had obligations to meet. I told her we would have to talk with her father before performing any operation. This talk was on July 29th. Prior to her entering the hospital her father came in to talk with me—just a day or two previous to her entering the hospital. I explained the situation to him, and made the same recommendations to him I did to her. He told me she had a sister in Iowa who was a nurse and suggested that she go down there, but that his daughter would prefer to stay here, and, because she did, he said for us to go ahead and take care of her. She entered the hospital a day or two after that, and we operated on her. * * * I recall having a conversation with defendant after the operation was performed. It was early in the spring of 1921. Mr. Madsen came in and said he had received several statements from our office; that right at that time he did not have the money to pay us the bill; * * *

that it would be an accommodation to him if we would allow this bill to run until the fall of 1921. That was agreed to. When I first talked, on July 29th, to Florence Madsen, and when I told her she needed an operation, she said she had no money to pay bills, and I then told her I would have to talk to her father before performing any operation."

It will be noted that throughout this entire conversation the matter of paying for plaintiff's services was not mentioned. When the patient told the plaintiff that she had no money to pay her bills, and plaintiff said, "We would have a talk with her father before performing any operation," he did not say that he would make arrangements with her father to pay the bill, nor that he would expect her father to pay the bill, nor that he would not perform the operation unless her father would agree to pay for it, nor was anything said by plaintiff in his conversation with defendant to the effect that he would expect defendant to pay the bill, nor did he intimate in any manner that he had not made satisfactory arrangements with the patient for the payment of his bill. But on the trial the following questions were put to the plaintiff:

"And what was your object at that time in demanding that her father come in and talk to you?"

And again:

"Well, state why it was that you demanded that you talk to her father at that time."

■ Upon objection by defendant, this testimony was excluded by the court, and these ruling are now assigned as error. There was no error in excluding these questions. All that was said in the conversation between plaintiff and defendant that related to the service about to be performed by plaintiff was competent and material. Plaintiff had a right to go into that conversation to the minutest detail. If his object was to secure an agreement from defendant to pay for the service about to be performed, he should have so stated, or at least to have said enough so this object might be inferred from what he did say, but such inference was to be drawn by the jury from what was actually said, rather than by plaintiff from what he might have had in his mind and did not say.

■ ■ Error is predicated upon the exclusion of the following question:

"State whether or not you would have performed an operation upon this defendant's daughter, if it had not been your understanding that he was going to pay for it."

This question was not competent. It called for the pure conclusion of the witness. It was not a question of what his understanding was, but a question of what the jury was warranted in understanding from what he said. It would have been just as competent for the defendant to have testified that he would not have permitted his daughter to go to the hospital, if it had not been his understanding that he was not to be held liable for the cost. As above stated, he had a right to narrate this conversation in full; he had an opportunity to so narrate it, and it will be presumed that he did so narrate it. Plaintiff then made the following offer:

"The plaintiff then offered to prove by this witness that, after Florence Madsen, the defendant's daughter, had told plaintiff that she could not pay for the operation, he instructed her, or told her that she would have to have her father come into his office and talk with him, so that he would know where his compensation was coming from before he would perform the operation, and that he would not have performed any operation unless he understood from the arrangement made direct with this defendant that this defendant was employing him direct, and was to pay for it."

This offer was denied, and error is predicated upon such denial. This offer might, with equal propriety, have been overruled or ignored altogether by the court. It was not an offer of any proof or any evidence whatever. Plaintiff was not prejudiced by its denial. He could still have gone on and offered any evidence he had, and this he would have been obliged to do if the objection had been overruled. Neither would defendant have been prejudiced if the objection had been overruled for he would still have had the right to interpose his objection to any evidence offered when the offer was properly made.

In order to maintain this action, it is necessary for plaintiff to show a promise, either express or implied, on the part of the defendant, to pay for the services to be rendered, and such promise must have been made before the service was rendered, because, if it were not made until after the liability had been in-

curred, it would be a promise to pay the debt of another, and could be evidenced only by a writing in some form.

■ In plaintiff's brief he says:

"The circumstances and what took place between plaintiff and defendant and the inferences drawn therefrom would naturally tend to show that defendant intended the plaintiff to understand and the plaintiff did understand that the defendant would pay for said services."

The testimony of the plaintiff does not warrant this inference. It will be noted that the request by plaintiff did not follow the disclosure by the daughter that she was without funds, but preceded it. Plaintiff testified that after he made the examination he told her that she should be operated on, and told her that before he operated he would want to talk with her father. It was then that she told him that she had no money to pay her bills. Up to that time there is nothing to indicate that the patient did not have the money to pay for any service that might be rendered by plaintiff. It is true that the plaintiff's request to see defendant was repeated after he knew the patient had no money, but there is nothing to indicate that the request was induced by this fact; and it is certain that the first request was not induced by such fact.

■ ■ Viewed in the most favorable light, the most that can be said of plaintiff's testimony is that defendant acquiesced in the performance of the operation by plaintiff. At first he suggested that the operation be performed elsewhere, but, because his daughter preferred to have plaintiff do it, defendant withdrew his objection and told plaintiff to go ahead and do it. Considerable stress is placed upon the fact that defendant paid the hospital bill, and when asked to pay plaintiff's bill said that just then he did not have the money to pay the bill, and that it would be an accommodation to him if the bill could be allowed to run until the following fall. This does not amount to a promise to pay the bill, and, if it did, it is a mere voluntary verbal promise, without consideration, to pay a pre-existing debt of another, and not binding unless put in writing. And, in the absence of an express promise, before the services were performed, to pay for the same, defendant could pay the hospital bill without obligating himself to pay for the physician's services.

 What we believe to be a leading case on this subject is Crane v. Baudouine, 55 N. Y. 256. In that case it is said that, in order to hold the father liable for medical services performed for an adult daughter, it is necessary to show a contract, express or implied, to pay for such services. That the acquiescence on the part of the father that the service be performed for the daughter for whom he is not bound to furnish such service is not equivalent to an acknowledgment that he will be liable for the payment for such service. The doctrine announced in this case has been approved and followed in the following cases: McGuire v. Hughes, 207 N. Y. 516, 101 N. E. 460, 46 L. R. A. (N. S.) 577, and note, Ann. Cas. 1914C, 585; Meisenbach v. Southern Cooperage Co., 45 Mo. App. 232; Dorion v. Jacobson, 113 Ill. App. 563; Voorhees v. N. Y., etc., Ry. Co., 129 App. Div. 780, 114 N. Y. S. 242; Van Gaasbeek v. U. S. Lace Curtain Mills, 132 App. Div. 595, 116 N. Y. S. 776; Morrell v. Lawrence, 203 Mo. 363, 101 S. W. 571, 120 Am. St. Rep. 660, 11 Ann. Cas. 650. It seems to be the well-settled rule that, in order to hold a party liable for medical services performed for the benefit of one for whom such party is not legally bound to furnish such service, there must be a contract, express or implied, to that effect. It is not necessary that the amount or value of such service must be agreed upon. A promise to pay the quantum meruit of such service is sufficient.

It would have been a simple matter in this case for plaintiff, in the conversation he had with defendent before he performed the operation, to have ascertained whether defendant intended to pay the bill.

The judgment appealed from is affirmed.

SHERWOOD and BROWN, JJ., concur.

CAMPBELL, P. J., and BURCH, J., dissent, being of the opinion that upon all the facts and circumstances of this case there was a question which should have been submitted to the jury, as to whether or not there was by fair implication an agreement on the part of respondent to pay for appellant's services to the daughter.