**Southern Surety Company, Appellant, v. Harrisburg Hospital, Inc., Appellee.**

Opinion filed June 5, 1929. ·

MILEY & COMBE, for appellant; P. G. RISHER, of counsel.

JAMES B. LEWIS, for appellee.

MR. JUSTICE ₍WOLFE delivered the opinion of the court.

Appellee brought suit in assumpsit against the appellant on account for hospital, surgical, medical and professional services rendered certain employees of A. Guthrie & Company, who had received personal

injuries in the course of their employment. Appellant had a contract of insurance with said A. Guthrie & Company against claims covered by the Workmen's Compensation Law of this State. There was no express contract between appellant and appellee. Injured employees were sent to the appellee by Dr. Duncan, who was employed by A. Guthrie & Company, and bills were rendered appellant for services performed by appellee. Some of the bills were paid by the appellant. The amount of unpaid bills is $1,307.50, for which appellee recovered judgment on a trial of the issues before the trial judge of the Saline county circuit court. Appellant defended the suit upon the theory that appellee's cause of action was against A. Guthrie & Company, who was primarily liable for necessary hospital, surgical and medical attention furnished to the employees and that whatever the contractual relations between A. Guthrie & Company and appellant were had no bearing in this suit.

Appellant contends that, if there was any liability upon an implied contract, by the conduct and manner of prior dealings between appellant and appellee, then the appellee was bound by the acts and recommendations made by Dr. R. B. Nyberg, when he advised appellant that certain of the patients would be discharged from the appellee's hospital on certain days, and that appellant would not be legally liable for charges rendered by said hospital for hospitalization of said patients after the date of which Dr. Nyberg advised appellant said patients would be discharged.

There is little, if any, dispute in regard to the facts in this case. For several years A. Guthrie & Company, by Dr. Duncan, had been in the habit of sending injured employees to the hospital for treatment and the bills had always been rendered to the appellant for the hospital services and treatment connected therewith, and, until the controversy over the bill now in question, had always been paid by the appellant to

the hospital company. It is not now contended that Dr. Duncan was not fully authorized by the appellant to place injured employees of A. Guthrie & Company in the hospital in question as agent and representative of the appellant. It is contended under the evidence and pleadings in this case that the plaintiff was not entitled to recover as there was no express agreement from the appellant to the appellee to pay for such services. The plaintiff relies wholly upon the course of conduct between the parties that had existed for the last several years as establishing an implied contract between the parties to pay for the services that had been rendered to the injured employees of A. Guthrie & Company.

We think that the evidence sustained the contention of the appellee that the appellant, by its acts and conduct in continuing to allow Dr. Duncan to send the injured employees of A. Guthrie & Company to the hospital for treatment, and without any protest paying the bills to the hospital company when they were rendered, would now be estopped from denying that it had authorized Dr. Duncan to send these patients to the hospital for treatment. The law is well settled that, if a principal, by his conduct toward third parties, causes them to reasonably believe that the second party is agent of the principal and authorized to contract for him, he is estopped from denying the authority of such agent, and when the principal accepts the benefits arising from the contract made by an unauthorized agent, he is liable on a special contract and cannot dispute the authority of said agent. *Fay v. Slaughter*, 194 Ill. 157; *Rawson v. Curtiss*, 19 Ill. 456. Or where a principal permits persons, employed by a person, who, with his knowledge, pretend to act for the principal, to continue to work without protest, he ratifies the acts of such agent and is primarily liable. *Pardridge v. La Pries*, 84 Ill. 51.

The appellant cites *American Hominy Co. v. National Bank of Decatur,* 294 Ill. 223, and *Dorion v. Jacobson,* 113 Ill. App. 563, as cases sustaining the contention that it is not liable in cases of this kind. The point in the above-cited cases is not the same as in this. There was no contention in either of those cases that the insurance company was liable, nor was the suit against the insurance company. In this case, as we view it, the Workmen's Compensation Act is not governing, since the case does not arise under that law or act, but it is a suit upon an implied contract for services rendered.

It is further contended by the appellant that even by admitting that there is a liability upon an implied contract, then the amount of settlement should be reduced from $1,307.50 to $1,064.50, for the reason that the patients were not discharged from the hospital at the time Dr. Nyberg wrote the appellant that three of these patients should be discharged from the hospital. Dr. Nyberg was the attending physician and surgeon in charge of these patients, and it is undisputed that he wrote to the appellant December 14, 1927, and stated that the patient Dan Radiocovich within a short time could be discharged from the hospital but should report back for daily treatment. On the same date similar letters were written in regard to patients W. H. Miller and George Sukis, stating, that they would be able to be discharged on December 19. None of these patients was discharged on the day that Dr. Nyberg stated in his letter to the appellant they would be discharged. Dr. Nyberg is very positive in his testimony and gives his reason why these patients were not discharged, viz.: That the patients did not improve as rapidly as he had anticipated.

Appellant does not attempt to disprove any of the evidence of Dr. Nyberg, but contends that for the reason that he did not notify it that the patients would

not be discharged, it cannot be held responsible for the care and services rendered these three patients from the date stated in the letter that they were to be discharged, until the time they were actually discharged from the hospital.

The only evidence offered by the defendant was a witness by the name of J. R. Callahan, an adjuster, employed by the Southern Insurance Company, who stated that he was acquainted with the cases of the parties involved in this suit; that he received the letters that Dr. Nyberg had written the defendant and on receipt of these letters he had gone to the Commerce Hotel and made arrangements for these men to lodge at that place and so advised the three patients, and he received no information that they had not gone to the hotel until after they were discharged from the hospital. He testified that in his opinion these three patients were able to be discharged December 19, 1927; that the rate for the room at the Commerce Hotel would be $12 per week. He further testified that he has no qualifications that would enable him to tell when a man should be placed in a hospital or able to be discharged. He made no examination of the patients at all. The difference between the rate charged by the Commerce Hotel and the hospital was about one dollar per day. He further testified that he was sent there by the Southern Surety Company to adjust cases in which men were injured while in the employ of A. Guthrie & Company on which the Insurance Company carried the insurance; that he arranged with Dr. Nyberg for the hospital bills, medical and hospitalization when they were hurt in the employ of A. Guthrie & Company; that he did that as an agent for the Southern Insurance Company.

We find nothing in this record to show that Dr. Nyberg's treatment of these cases is subject to criticism. Certainly when the appellant placed these pa-

tients in charge of the hospital, as it had been doing for years, it relied upon the hospital staff to treat its patients and restore them to health in the shortest time possible. The doctor in charge of a case owes a duty to give his patient his best efforts and skill in the treatment of his disease or injury, and to discharge him from the hospital and treatment at the earliest possible time that in his judgment would be proper under the circumstances; but, it is also his duty to retain a patient in charge of the institution and properly treat him until such time as in his best judgment he feels that the patient should be discharged. Dr. Nyberg had charge of these cases. The responsibility was upon him to say when these patients would be discharged and if they had not recovered as rapidly as he had anticipated it was his duty to retain them and treat them until such time as in his opinion they should be discharged. We see nothing in the actions of Dr. Nyberg nor the hospital that should relieve the appellant from paying for the care of these patients after the time the doctor wrote the letter anticipating that these patients would be discharged down until the time they were acually discharged.

The learned trial judge properly found that the appellant company was indebted to the appellee in the sum of $1,307.50. The judgment of the circuit court of Saline county is hereby affirmed.

*Affirmed.*